William J. WINEBERG, Appellant,

v.

Raymond P. PARK, Appellee.

No. 18433.

United States Court of Appeals Ninth Circuit.

Aug. 6, 1963.

W. T. Hollen, Newport, Or., Stewart M. Whipple and Maurice W. Seitz, Portland, Or., for appellant.

Buss & Pihl, Donald A. Buss, and Julian Herndon, Jr., Portland, Or., for appellee.

Before HAMLIN, JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge.

This is an action based on diversity of citizenship. We will refer to the parties to this appeal by their designation in the District Court. Plaintiff is a citizen and resident of the State of Oregon, and defendant is a citizen and resident of the State of Washington. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00.

The defendant appeals from a judgment entered against him and in favor of plaintiff. The trial was to the Court, a jury having been expressly waived by the parties.

By his complaint, plaintiff sought judgment against the defendant in the sum of $61,231.08 for merchandise (lumber) sold and delivered to defendant. Defendant in his answer denied indebtedness to plaintiff in the above or any other sum.

In the pretrial conferences, which culminated in a pretrial order:

It was plaintiff's contention that he had sold and delivered lumber to defendant of the reasonable value and for the agreed price of $86,956.44; that he had been paid the sum of $25,725.36 on account; and there was due from defendant to plaintiff the sum of $61,231.08, plus interest.

It was defendant's contentions that he had guaranteed, in writing, payment up to $25,000.00 worth of lumber to be purchased from plaintiff by a corporation existing under the laws of the Republic of Mexico; that it was understood that if additional lumber should be shipped by plaintiff to the Mexican corporation, that it would be shipped on consignment and that defendant would have no connection therewith, and would not be responsible therefor; that defendant paid plaintiff in full for the lumber shipped under the guarantee; that defendant was not indebted to plaintiff in any sum; and that, in any event, the additional lumber shipped was unmerchantable and unfit for the purposes intended.

The issues for trial, contained in the pretrial order, simply reflect the contentions of the parties as above set forth.

Further pretrial proceedings were conducted by the District Court on the first day of the trial. Nothing of significance developed at the conference except plaintiff's statement that all of the lumber involved in the transaction was sold by plaintiff to defendant under an oral contract.

It appears from the evidence that plaintiff desired to sell, and the Mexican corporation desired to purchase, lumber; that plaintiff was unwilling to sell lumber to the Mexican corporation because of his need to finance the transaction and the corporation's questionable credit standing, without having a guarantee of payment from some third person; that

defendant, who had various business interests in Mexico and some connection with the Mexican corporation, which connection is not clearly reflected in the record, approved, and affixed his signature to a letter from the plaintiff to the defendant, dated November 1, 1960, which letter states:

"With reference to our conversation with your manager Mr. Lloyd Arndt and myself, I would like to resolve on paper our understanding as to payment and also with reference to your personal guarantee.

"It is my understanding that you will guarantee Lloyd Arndt's purchase for Timber up to $25,000.00, and that on this first $25,000.00 payment will be made in eight (8) equal payments. First payment due in 10 days and alike payments due every 10 days until paid.

"If this is your understanding, please acknowledge by signing and returning to Denny.

"Thank you very much.";

that plaintiff's factor was unwilling to accept an assignment of an invoice of the lumber proposed to be shipped to the Mexican corporation under defendant's guarantee in the letter above set forth, but insisted upon a direct sale of the lumber to the defendant; that on November 8, 1960, at a meeting between plaintiff and defendant, plaintiff informed defendant of the factor's objection; on the same day defendant signed the following document prepared by plaintiff's factor:

"November 8, 1960

"I hereby acknowledge the assignment of the attached invoice number 13332 to Parkway Factors in the amount of $25,725.36 wherein I purchased from Park Loading Company, 476,253 board feet of lumber and 30,079 feet of plywood.

"I agree to recognize such assignment and to make all payments required, directly to Parkway Factors at the times and in the amounts required by his invoice as stated thereon.

"/s/ Wm. J Wineberg."

That on the same day, according to plaintiff's testimony, the following conversation ensued:

"Q   Approximately when was this meeting, and who was present?

"A   Just Mr. Wineberg and myself. I went over to his home—just he and I.

"Q   Had you had any telephone conversations with him prior to this meeting in Vancouver?

"A   Well, I called him and told him—I made an appointment, for one thing, and told him that we would have to—I called him for an appointment and told him there had to be some different arrangement as to the invoices.

"Q   Then you met with Mr. Wineberg. Will you tell the Court what conversation you had with him in Vancouver, with Mr. Wineberg?

"A   I told him that we couldn't sell a Mexican corporation with a guarantee.

"THE COURT: Had the guarantee been signed at that time?

"A   Yes.

"THE COURT: The first guarantee?

"A   Well, yes, it had. Yes, the guarantee had been signed. I told him that we couldn't sell a Mexican corporation; that the guarantee wouldn't work in that form, and the sale would have to be made to him direct; we would have to invoice him direct.

"Q   (By Mr. Buss)   What was his reply to you?

"A   He agreed to that.

"Q   Now, during this meeting was there any discussion had as to the amount of lumber that was to be shipped to Mexico?

"A   Well, also Mr. Ahrendt ordered considerably more than $25,-

000 worth, and this I discussed with him.

"THE COURT: What was the conversation on that?

"A Well——

"THE COURT: What do you mean by 'considerably more than $25,000 worth'?

"A Well, Mr. Ahrendt ordered about $86,000 worth of lumber.

"THE COURT: Did he order it in dollars, or did he order it in feet or what?

"A Well, in board footage. We had the breakdown of it in board footage. It wasn't figured in dollars, because the amount was not extended at that point."

\* \* \* \* \* \*

"Q Did Mr. Wineberg agree that he would be the purchaser of this lumber and that it could be shipped to Mexico?

"A Yes."

\* \* \* \* \* \*

"Q (By Mr. Buss) Now Mr. Park, would you describe to the Court any conversations and representations that Mr. Wineberg made to you relative to Mr. Ahrendt's association with Mr. Wineberg.

"A Well, Mr. Ahrendt managed——

"THE COURT: The question is what did Mr. Wineberg tell you about Mr. Ahrendt.

"A Well, I can't remember any specific thing he told me about him. He told me that he handled his affairs there, and that he was authorized to buy this lumber; that he actually was his agent in Mexico."

\* \* \* \* \* \*

"Q Will you tell the Court generally what this is and the circumstances surrounding the execution of this document?

"A Well, this was the original guarantee that—this covered the original lumber that we intended to

ship, and this was signed by Mr. Wineberg and myself. That is all it it. It is a guarantee.

"Q Now, Mr. Park, can you describe to the Court what ramifications this guarantee had as far as future sales to Mr. Wineberg and the Mexican company are concerned?

"MR. HOLLEN: Now, I object to the leading question.

"THE COURT: Overruled. I think what you are asking, Mr. Buss, is essentially what happened to this guarantee, if anything.

"MR. BUSS: Yes.

"THE COURT: All right. What happened to it?

"A Well, it wasn't used. We didn't use the guarantee because the sale had to be made direct to Mr. Wineberg.

"Q (By Mr. Buss) Now, this guarantee, I believe, is dated November 1st, is it not?

"THE COURT: November 1st, 1960."

The record reveals:

That the remaining shipments of lumber to the Mexican corporation were invoiced to defendant upon confirmation orders signed by Lloyd Ahrendt; that the plaintiff assigned all of the invoices to an Oregon bank which in turn mailed them to defendant; that the defendant directed his bookkeeper to mail the invoices to Lloyd Ahrendt in Mexico; that the Oregon bank and the plaintiff wrote several letters to the defendant requesting payment, which were not answered; that on several occasions defendant acknowledged his indebtedness to plaintiff; and that all of the lumber involved in the controversy was delivered.

While we recognize that there is a conflict in respect to portions of the evidence which we have summarized above, we have, as we must, viewed the evidence in the light most favorable to support the judgment, and we have paid deference to the right of the District Court to judge the credibility of the wit-

nesses and the weight to be accorded their testimony.

Included in the findings of fact of the District Court are the following:

1. Plaintiff has sustained the burden of proof that he sold and delivered lumber to the defendant.

2. That the reasonable value of the lumber sold and delivered by the plaintiff to the defendant was $74,956.16.

3. That the defendant has paid to plaintiff the sum of $25,725.36 on account of said lumber.

4. That the defendant is indebted to the plaintiff in the sum of $49,230.80 with interest thereon from February 1, 1961, at the rate of 6% per annum on account of the purchase of said lumber.

5. That the delivery of said lumber to the defendant was pursuant to contract of sale entered into between plaintiff and defendant, and the delivery of the lumber was not on account of a guarantee or on consignment to defendant or a third party, as contended by the defendant.

The issue as to the merchantability of the lumber raised by defendant in the pretrial conference, is not asserted on this appeal and plaintiff has taken no cross-appeal from the judgment.

In his statement of points on appeal, upon which he claims the District Court erred, defendant asserts only insufficiency of the evidence to support the findings of fact, and claimed error on the part of the District Court in the admission into evidence of certain designated exhibits.

In his opening brief, defendant specifies as additional errors: (a) Absence of any written memorandum of sale signed by the defendant or by an agent thereunto duly authorized in writing; (b) Absence of any proof of agency relationship between the defendant and Lloyd Ahrendt; (c) That the Court applied the wrong standard in determining burden of proof; and (d) That the Court believes the parties were in pari delicto.

■■ It is interesting to note that neither in the pleadings, the pre-trial conferences, nor in the course of the trial did the defendant raise the issue of the lack of any written memorandum of the sale signed by defendant or his authorized agent. In this connection we note that Rule 8(c) of the Federal Rules of Civil Procedure provides that a defendant shall set forth in his answer his affirmative defenses, including the Statute of Frauds. Failure to do so operates as a waiver of such defense under Rule 12(h) of the Federal Rules of Civil Procedure. Oedekerk v. Muncie Gear Works, 179 F.2d 821 (7th Cir. 1950). Even if the waiver should be overlooked, the evidence in the record forecloses any contention that the contract was within the Statute of Frauds. There is sufficient evidence in the record to support the findings of the District Court that the lumber in controversy was sold by the plaintiff, and purchased by the defendant, under an oral agreement; that the lumber was delivered to and accepted by the defendant; and that the sale and delivery of the lumber was not on account of a guarantee or on consignment to defendant or other party.

■ Rule 52(a), Federal Rules of Civil Procedure, provides that findings of fact made by the trial court shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Plaintiff is entitled to have the evidence viewed in a light most favorable to him. We must assume that the trier of fact resolved all conflicts in the evidence in his favor. It is entitled to all favorable inferences as may reasonably be drawn from the evidence.

■ We find no merit in defendant's contention that the District Court erred in the admission of specified documents. Defendant contends that the documents were irrelevant, immaterial and not impeaching. Defendant states in his opening brief that these documents "had no impeaching effect upon appellant's testi-

mony, but in fact confirmed the same. There was nothing contained in these exhibits that had not already been testified to and admitted by appellant." If the Court erred in admitting such documents, we are convinced from our study of the record that defendant was not prejudiced thereby and the error, if any, is harmless.

We have reviewed other errors assigned by the defendant. We find them without merit.

The judgment of the District Court is affirmed.