In this contract case Miller, the defendant below, raises three issues on appeal: (1) whether there is sufficient evidence to sustain the judgment or whether it is contrary to the evidence; (2) whether the oral contract for the purchase of a skidder is enforceable; and (3) whether the oral contract should be enforced because of Code of Alabama 1975, § 5-19-16
dealing with unconscionable contracts.
The judgment reveals Miller was ordered to pay Brown-Fikes Ford, Inc., the plaintiff below (hereinafter Brown-Fikes), the sum of $1,651.89 together with costs.
Brown-Fikes filed a complaint consisting of four counts. It alleged Miller owed $2,000 due by open account; Miller owed $2,000 on account stated; Miller owed $2,000 for goods sold and delivered by Brown-Fikes on April 7, 1975; and Miller owed $2,000 on a retail installment contract entered into on April 7, 1975 on which he failed to make payment. Miller answered the allegations in the complaint by stating the complaint failed to state a claim upon which relief can be granted, pleading the general issue, and denying each and every allegation.
The trial court conducted an ore tenus hearing and entered a judgment for Brown-Fikes. Miller filed a motion for a new trial on August 8, 1978, and it was deemed denied pursuant to Rule 59.1, ARCP.
The record reveals the following pertinent facts:
Brown-Fikes and Miller entered into a retail installment contract on April 7, 1975. *Page 1053 
This agreement was described as in the "nature of a loan." A 1972 LTD owned by Miller was put up as security for $2,200 less a $650 down payment, which difference came to $1,550, the total amount financed. Brown-Fikes assigned the agreement to Ford Motor Credit for $1,749.06 shortly after April 7, 1975. After Ford Motor Credit purchased the agreement, the agreement became delinquent and Ford Motor Credit assigned the agreement back to Brown-Fikes. Evidence showed two $97.17 payments made to Ford Motor Credit on the account of Miller. One was made on June 16, 1975 and the other on July 1, 1975. Late charges were assessed on May 19, 1975, June 17, 1975 and July 17, 1975. The account was paid off by Brown-Fikes on August 26, 1975 in the amount of $1,466.98. Both of the $97.17 payments were made directly by Brown-Fikes to Ford Motor Credit. Jim Brown, the owner of Brown-Fikes, testified that on occasion Brown-Fikes paid on an account if the customer defaulted. He further testified the first $97.17 payment was actually paid to Brown-Fikes by Miller and Brown-Fikes sent in its own company check for the payment a few days after Miller paid. Miller testified he did not remember making the payment. However, one exhibit indicates Brown-Fikes received $97.17 on June 11, 1975 from Miller. The reason for payment does not appear on the exhibit.
The evidence indicates that Brown-Fikes received a check from Ford Motor Credit in the amount of $1,550 after it assigned the agreement to Ford Motor Credit. It is undisputed that Miller never received the $1,550 personally. Jim Brown testified he and Miller entered into an oral contract for the sale of a truck and skidder and they agreed Miller would use the $1,550 as a down payment on the skidder. Miller disagreed and said there was never any oral agreement to that effect. He claims he asked Brown for the $1,550 to operate on and not to use as a down payment on the skidder. Miller claims he agreed to make payments on the skidder of $260 per month for its use. If he decided to keep the skidder, the agreement was to make the payments and pay it off. Miller understood the skidder belonged to Jim Brown and his father; however, Jim Brown claims it belonged to his father alone. A check, made payable to Jim Brown, dated December 21, 1974 in the amount of $3,774.07 was introduced into evidence. Miller testified the check was final payment for the truck which he understood was priced around $3,700. Brown made an educated guess that the check was for payment on the truck; however, he was unsure, as Miller had made many payments to Brown over the years for different purchases.
The testimony is in conflict as to the date on which the truck and skidder were to have been purchased. Brown at one point during the hearing testified both were purchased on April 7, 1975. Later Brown said he sold the truck and skidder together in a package deal with two or three days between the purchase of each. Finally, Brown said he really had no idea about the dates of the alleged purchases. Miller claims he purchased the truck and obtained possession of the skidder on December 15, 1974.
Brown-Fikes repossessed the skidder and sold it for $4,500. There was no record of the sale. Miller testified he made about three or four payments on the skidder after December 15, 1974 and Brown repossessed the skidder after he was behind one payment. The exact date of repossession is unclear from the record; although it appears to have been sometime during the period April to June 1975. Brown testified Miller had the skidder approximately six months. He also testified it was possible Miller made payments to his father on the skidder; however, his memory was unclear.
It is apparent from the above summary of the facts that the evidence in this case is conflicting in many respects. The trial court's finding, based on conflicting evidence, will be accorded the same effect on appeal as jury's verdict. Williamsv. Clark, 45 Ala. App. 478, 232 So.2d 660 (1970); Daniel v.Matthews, 46 Ala. App. 568, 246 So.2d 457 (1971); see 2A Ala.Dig. *Page 1054 Appeal Error 931 (3). Furthermore, we view the findings as to all questions of fact with a presumption of correctness, and such presumption is strengthened by refusal of the trial court to grant a new trial. Dial v. Graves, Ala.Civ.App.,351 So.2d 598 (1977).
Miller's next contention is that the oral agreement for the purchase of a skidder is unenforceable because of a failure to comply with the statute of frauds.
Although the asserted defense was directed at count three of the complaint, which states Miller "owes the Plaintiff the sum of Two Thousand and 00/100 Dollars ($2,000.00) for goods sold and delivered by Plaintiff to the Defendant on April 7, 1975," (the "goods sold and delivered" refers to the oral contract for the sale of the skidder which Brown claimed to have made between Miller and himself), it comes too late.
Rule 8 (c), ARCP, requires an affirmative defense such as the statute of frauds to be affirmatively set forth. Miller failed to plead the statute of frauds in either his answer or in his motion for new trial; therefore, the defense is waived.Robinson v. Morse, Ala., 352 So.2d 1355 (1977); e.g. Winebergv. Park, 321 F.2d 214 (9th Cir. 1963).
Should the defense of the statute of frauds be considered valid, the oral contract would still be enforceable because the transaction in question falls within an exception to the statute of frauds. Section 7-2-201 (3)(c), Code of Alabama 1975, provides as follows:
 (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
. . . . .
 (c) With respect to goods for which payment has been made and accepted or which have been received and accepted.
The evidence is sufficient to support the conclusion that the skidder was sold to Miller pursuant to an oral agreement and that it was delivered to and accepted by him.
The third issue raised on appeal by Miller, i.e. the oral agreement was an unconscionable contract and therefore should not be enforced, see § 5-19-16, Code of Alabama 1975, will not be considered for the reason that issues not raised in the trial court may not be raised for the first time on appeal.Brown v. Robinson, Ala., 354 So.2d 272 (1978); 2 Ala.Dig.Appeal Error 169.
The trial court's judgment on the merits and its order overruling the motion for new trial are affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.