**GREG F. CLAYTOR, Plaintiff**

**v.**

**CHENAY BAY BEACH RESORT D/B/A INVERNESS HOTEL CORP., PETER LOCKE AND JAY ROTH, Defendants.**

Civ. No. 1998/175

District Court of the Virgin Islands

Division of St. Croix

December 30, 1999

379

JENNIFER JONES RODRIQUEZ, ESQ., KARIN A. BENTZ, ESQ., *Law Offices of Karin A Bentz, Esq.*, Charlotte Amalie, VI, *for Plaintiff.*

DONOVAN M. HAMM, JR., ESQ., St. Croix, VI, *for Defendants*

FINCH, *Chief Judge*

## I. INTRODUCTION AND BACKGROUND

This case arises out of an employment dispute that occurred between plaintiff Greg F. Claytor (hereinafter "Claytor"), a one time employee at defendant Inverness Hotel Corp. ("Inverness"), and defendant Peter Locke ("Locke"), a minority shareholder at Inverness who served as the hotel's president. (*See* Defendants' Statement of Facts Not in Dispute ("Undisputed Facts"), included in Def[s.'] Br. at 1,3). In early 1997 Claytor interviewed with Locke and Jay Roth ("Roth"), the controlling shareholder at Inverness, for the hotel's general manager position. (*See id.* at 1). At that time, Roth and Locke were engaged in a dispute over the control of Inverness' operation. (*See id.*). Against the recommendation of Locke, Claytor was hired by Roth, who allegedly instructed Claytor to take orders only from him. (*See id.* at 2). As a result of Roth's directive, a confrontational relationship developed between Locke and Claytor, who refused to follow the instructions of Locke. (*See id.* at 3).

Soon after Claytor began his employment, the dispute between Roth and Locke reached a head when Roth filed suit against Locke in the Territorial Court. (*See* Locke Aff. at ¶ 8, attached to Pl[.'s] Objection to Motion for Summary Judgment). On March 26, 1997, the parties settled the action via an agreement which provided, inter alia, that Claytor would be hired as a "probationary" manager of the hotel until June 30th 1997, and that the stockholders

could, by a unanimous vote, agree to extend his contract. (*See* Settlement Agreement ("Agreement") at ¶ 11, attached as Def[s.'] Ex. A). The agreement further stated that, absent a unanimous shareholder vote, the plaintiff could not be terminated prior to the end of the June 30th probationary period. (*See id.* at ¶¶ 6,11).

On the evening of April 9th 1997, Claytor, accompanied by a female friend who was not an employee at Inverness, was working on the hotel's payroll records when Wendy Locke, the hotel's vice president, arrived. (*See* Def[s.'] Undisputed Facts at 3). A dispute as to who was authorized to be present in the office ensued between Wendy Locke and Claytor, and Wendy ultimately left. (*See id.* at 3-4). Immediately thereafter she informed her husband Peter Locke, who confronted the plaintiff at the Inverness' office. (*See id.* at 4). Locke demanded that Claytor's friend be asked to leave, asserting that she was not authorized to be present while the plaintiff handled confidential payroll matters. (*See id.*). Claytor then responded "Why don't you just fire me?" (*See* Pl[.'s] Objection. to Motion for Summary Judgment at 3). Locke then obliged the plaintiff by terminating him. (*See* Undisputed Facts at 4).

The following morning, realizing that under the settlement agreement he did not have the authority to terminate Claytor, Locke approached the plaintiff and informed him he was no longer fired. (*See id.*). Locke also stated that if Claytor failed to obey his directions, he would be relegated to cleaning the beaches. (*See id.*). After his April 10th conversation with Locke, Claytor left the island and did not return to work. (*See id.* at 5).

On July 20th 1998, plaintiff filed suit against Inverness and Locke, asserting claims for: 1) wrongful discharge under Section 76, Title 24 of the Virgin Islands Code; 2) breach of contract; 3) breach of the duty of good faith; and 4) intentional infliction of emotional distress. (*See* Complaint). On November 24th 1999, defendants filed the instant motion, seeking dismissal, on various grounds, of all claims against the defendants. In response, the plaintiff filed a cross-motion for summary judgment with respect to the breach of contract claim. (*See* Pl.'s Objection to Motion for Summary Judgment). This opinion addresses the issues raised by defendant and plaintiff in their respective motions.

## II. DISCUSSION

### 1. Standard For Summary Judgment

The standard for granting summary judgment is a stringent but surmountable one. That is, summary judgment is appropriate only when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence in favor of the non-moving party. *Serbin*, 96 F.3d at 69 n.2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

Supreme Court decisions mandate that a motion for summary judgment must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Lawrence v. National Westminster Bank of New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Instead, the non-moving party must "by affidavits or by depositions and admissions on file 'mak[e] a showing sufficient to establish [that a genuine issue of material fact exists as to each] element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## 2. Wrongful Discharge Claim

Citing the Virgin Islands Code, plaintiff asserts that defendants' actions constitute a violation of the Wrongful Discharge Act. (*See* Pl[.'s] Compl. at ¶¶ 26-29). Recent caselaw, however, has called into question the statute's validity. After reviewing the statute within the context of section seven of the National Labor Relations Act ("NLRA"), the Court finds that the statute is directly pre-empted by federal law and therefore dismisses Claytor's wrongful discharge claim.

The Virgin Islands Wrongful Discharge Act ("WDA") was enacted in 1986. *See* 24 V.I.C. § 76 (1996). Barring certain exceptions not relevant to the instant matter, the statute strictly limits the grounds upon which an employer is entitled to dismiss an employee. *See id.* As originally enacted, the WDA allowed parties to alter or modify by contract the potential grounds for employee dismissal. *See* 24 V.I.C. § 76 (1986). However, on February 21, 1996, the statute was amended, providing that "unless modified by *union* contract[,]" an employer's grounds for termination were limited to the nine enumerated reasons. 24 V.I.C. § 76 (1996) (emphasis added). Thus, while the statute expressly preserved a union member's ability to modify the enumerated grounds for dismissal, it effectively precluded a non-union member from doing so.

In *Bell v. Chase Manhattan Bank,*[1] the court addressed the WDA's potential conflict with section 7 of the NLRA. The court concluded that the statute is "preempted because it directly violates the federal labor policy of allowing employees to refrain from union activities by forcing a worker and an employer to enter into a union contract in order to modify the statutory grounds for dismissal." 40 F. Supp. 2d 307 at 315. We agree.

█ Section seven of the National Labor Relations Act provides, in pertinent part that all employees shall have:

> the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other

---

[1] 40 V.I. 377, 40 F. Supp. 2d 307 (D.V.I. 1999).

concerted activities for the purpose of collective bargaining or other mutual aid or protection, and *shall also have the right to refrain from any or all of such activities* except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment[.]

29 U.S.C. § 157 (emphasis added). Thus, the statute clearly protects non-union employees by providing an unfettered right to "refrain" from the use of unions as a means to negotiate labor agreements.

It is important to note that while section seven preserves inviolate a non-union members right to refrain from collective bargaining, it recognizes that an individual may have to compromise his/her right to refrain from union involvement in the limited instance where membership in a labor organization is a condition upon which an employment agreement is based. The WDA, however, compromises bargaining rights in instances where individuals have elected not to join unions by "eviscerat[ing] the ability of non-unionized employees and employers to modify by contract the WDA's nine legal grounds for discharge[.]" *Bell*, 40 F. Supp. 2d at 314. The necessary affect of such legislation is that the WDA forces a private employee to join a union in order to procure additional protection from dismissal and thereby "violates section 7's guarantee that 'employees have the right to refrain from any or all' concerted activities relating to collective bargaining or mutual aid or protection[.]" *Id.* at 315 (quoting *NLRB v. Granite State Joint Bd.*, 409 U.S. 213, 216, 34 L. Ed. 2d 422, 93 S. Ct. 385 (1972)).

■ Thus the Court concludes that the WDA, which requires an employee to join a union in order to modify the statutory grounds for termination, directly violates section seven of the NLRA by compromising an individual's right to enter into an employment agreement free from union involvement. Accordingly, we agree with the *Bell* court's finding that the WDA is in actual conflict with section seven of the NLRA and is therefore preempted.[2]

---

[2]The plaintiff's brief asserts that should the Court find the current version of the WDA preempted by section seven, it should limit the effect of preemption to the 1996

Plaintiff alternatively argues that in the event the Court finds the WDA preempted, Claytor should be entitled to a recovery for wrongful discharge because his termination violates public policy. Even assuming, arguendo, that a public policy exception exists, the Court does not find that the facts of the instant case warrant special consideration.

While plaintiff cites to Virgin Islands' cases which created exceptions to the general rule that employment contracts were terminable at will,[3] we find these cases distinguishable from the instant matter since they involved instances where the employees were "discharged for reasons contrary to a clear mandate of public policy." *Moore v. A.H. Riise Gift Shops*, 659 F. Supp.1417, 1423 (D.V.I. 1987) (finding a wrongful discharge cause of action was viable where an employer allegedly failed to comply with a Virgin Islands' statute which required employers to rehire previously disabled employees); *see also Robinson v. Hess Oil Virgin Islands Corp.* 19 V.I. 106, 110 (D.V.I. 1982) (finding that termination of employee for refusal to submit to a polygraph test infringed upon employee's privacy rights and thus violated public policy).

■ Here the plaintiff's brief fails to identify a single element of public policy, aside from the broad policy concerns embodied in the WDA, warranting the creation of an exception to the common law doctrine. Allowing such a broad policy interest to satisfy the requirements of Moore would sound the death knell for the doctrine of "at will" employment defined in the restatements. Presumably every allegation of "wrongful" termination would automatically satisfy the public policy requirement espoused in the previously cited opinions. Creation of such a self-perpetuating "exception" would undermine the holdings of *Robinson* and *Moore* and would abolish the common law principles embodied in the restatements. This the Court refuses to do. Accordingly, the Court

---

amendment, thereby allowing the rest of the statute to remain in force. After careful consideration, the Court rejects this assertion, finding that merely removing the 1996 amendment from the statute would not resolve its conflict with the NLRA, since union employees would still be free to modify grounds for dismissal while their non-union counterparts would not. *See Bell*, 40 F. Supp.2d at 313-14 (noting that federal labor law preempts state legislatures from dictating what grounds for dismissal must be included in a collective bargaining agreement).

[3] *See* RESTATEMENT (SECOND) AGENCY § 442 (1958).

finds that the defendants' motion for summary judgment is granted and the plaintiff's claim for wrongful discharge is therefore dismissed.

## 3. Breach Of Contract Claim

Defendants proffer two reasons why plaintiff's breach of contract claim should be dismissed: 1) the defendants argue that the plaintiff's claim is barred by the Statute of Frauds; and 2) defendants contend that Claytor's refusal to return to work forfeited any right to continued compensation.

### a) *Statute of Frauds*

The Virgin Islands Code requires that "[a]n agreement that by its terms is not to be performed within one year" is void "unless such agreement, or some note or memorandum thereof is in writing, and subscribed by the party to be charged[.]" 28 V.I.C. § 244. In the case at bar, Claytor contends that the parties "entered into an employment contract for the term of one (1) year with a three (3) month extension." (Compl. at ¶ 13). The plaintiff, however, has failed to produce a copy of the alleged contract. Citing *Cooper v. Vitraco,*[4] a Virgin Islands case which reasoned that the Statute of Frauds applied "to employment contracts for a duration of one year or more," the defendant argues that the plaintiff's breach of contract claim must be dismissed. Finding that the defendants have waived their statute of frauds defense, the Court rejects this contention.

Caselaw from the Third Circuit, as well as other circuits, clearly provides that a failure to raise the statute of frauds in the answer constitutes its waiver as an affirmative defense. *See Flight Sys., Inc. v. Electronic Data Sys. Corp.,* 112 F.3d 124, 127 (3d Cir. 1997) (explaining that the statute of frauds "will not bar recovery if [the defendant] fails to raise the defense in its answer"); *see also Wineberg v. Park,* 321 F.2d 214, 218 (9th Cir. 1963); *Oedekerk v. Muncie Gear Works,* 179 F.2d 821, 824 (7th Cir. 1950). Here, the defendants omitted the statute of frauds defense from their answer, thereby waiving the defense.

---

[4] 320 F. Supp. 239, 240 (D.V.I. 1970).

■ Moreover, we find an additional ground for the defense's waiver. In response to the plaintiff's first set of interrogatories, defendant Locke acknowledged the existence of an oral agreement between Claytor and majority shareholder Roth which provided employment for the plaintiff at a rate of $65,000 a year. (*See* Pl[.'s] Interrogatories at ¶¶ 3,8-9). In *Flight Systems*, the Third Circuit explained that the statute of frauds is waived if the defendant "admits to the existence of a contract in pleadings or testimony." 112 F.3d at 127. The Court agrees with the result in *Flight Systems*, finding it consistent with the law of other jurisdictions. *See e.g. Dehahn v. Innes*, 356 A.2d 711 (Me. 1978); *Packwood Elevator Co. v. Heisdorffer*; 260 N.W.2d 543 (Iowa 1977); *Consolidation Servs., Inc. v. Keybank Nat'l Assoc.* 185 F.3d 817, 820 (7th cir. 1999); *Anchorage-Hynning & Co. v. Moringiello*, 225 U.S. App. D.C. 114, 697 F.2d 356, 362 (D.C. Cir. 1983). Therefore, the Court concludes that since the defendants' response to interrogatories acknowledged the existence of a contract, they are thereby precluded from asserting the statute of frauds as a defense.

### 2. *Claytor's Refusal to Return to Work*

Defendant alternatively contends that the plaintiff's refusal to return to work forfeited Claytor's rights to compensation under any existing agreement. Thus defendants contend, they are entitled to judgment as a matter of law with respect to plaintiff's breach of contract claim. Because material questions of fact exist, the Court refuses to grant defendants' motion.

■ The crux of plaintiff's breach of contract claim, as well as the defendant's summary judgment request on the matter, lies in the interpretation of the parties April 9th 1997 exchange. On that evening, Claytor invited Locke to fire him, and the defendant obliged. (*See* Undisputed Facts at 4). Examining the exchange within the context of events surrounding the situation, the Court finds the parties' actions equivocal in nature, thereby creating a question of fact for the jury as to whether Locke's actions constituted a termination by the defendants or a voluntary release of any

387

relevant contract rights by the plaintiff.[5] This is a question best left to the trier of fact, and therefore defendant's request for summary judgment is denied.[6]

The Court finds that the same reasoning applies to the plaintiff's crossmotion on this issue. Since the plaintiff's claim is grounded primarily upon the April 9th exchange between Locke and Claytor, the Court finds that a grant of summary judgment is likewise inappropriate.

### 4. Breach Of Duty Of Good Faith

The second restatement on contracts provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) Contracts § 205 (1981). This duty has been recognized in several Virgin Island cases *See e.g., In re Tutu Water Wells Contamination Litigation*, 40 V.I. 279, 32 F. Supp. 2d 800, 808 (D.V.I. 1998); *Jo-Ann's Launder Ctr., Inc. v. Chase Manhattan Bank*, 854 F. Supp. 387, 390 (D.V.I. 1994).

Comment d to § 205 recognizes that "interference with or failure to cooperate in the other party's performance" provides a cognizable basis for relief under the restatement. Restatement (Second) Contracts § 205 cmt.d. In the instant matter Claytor contends, and it does not appear disputed by the defendants, that he was hired by the hotel's controlling shareholder, Roth, who instructed Claytor to follow only his orders. (*See* Undisputed Facts at 2; *see also* Locke Aff. at ¶ 5). Defendants likewise concede that defendant Locke and his wife Wendy were not willing to accept without

---

[5] *See Board of County Commissioners, Citrus Cty v. Florida Dep't of Commerce*, 370 So. 2d 1209, 1210-11 (Dist. Ct. App. Fla 1979) (upholding a referee's finding that a public employee had left his job without good cause and was therefore precluded from unemployment compensation when, in the face of allegations of misconduct, the employee requested that the board fire him, and the board terminated him).

[6] In addition, the Court finds that numerous questions of fact exist as to the specific terms and conditions of Claytor's employment agreement. The Court notes that the instant summary judgment motion is an improper vehicle for the determination of these important issues, especially where the plaintiff attests that he can not obtain a copy of the agreement because Roth, the controlling shareholder of the defendant hotel, has refused to cooperate with the plaintiff's requests. (*See* Claytor Aff. at ¶ 5, 6, 12, attached).

dispute "Claytor's repeated assertions that he only took orders from Roth[.]"

■ Based on these facts, we find that a reasonable juror could conclude that the control dispute between Locke and Roth created an acrimonious situation which directly interfered with the plaintiff's ability to perform under the contract. Such a conclusion would support a reasonable finding that the defendants breached the duty of good faith and are therefore liable to the plaintiff. While the defendants argue that a more rigorous standard applicable to 'at-will' employment contracts applies, the Court rejects this contention, refusing to conclude as a matter of law that the plaintiff's employment contract represented an 'at-will' agreement. Indeed Claytor's affidavit, as well as specific provisions in the settlement agreement, support a reasonable inference to the contrary. (*See* Claytor's Aff. at ¶ 3; *see also* Settlement Agreement at ¶ 11). Accordingly, the Court concludes that material questions of fact remain and therefore the defendants' motion for summary judgment with respect to plaintiff's breach of the duty of good faith is denied.

### 5. Intentional Infliction Of Emotional Distress Claim

Arguing that the plaintiff's allegations fail to rise to the level of outrageousness necessary to recover in tort for intentional infliction of emotional distress, the defendants move for summary judgment on this claim. After reviewing the relevant facts and caselaw, the Court finds that the defendant's motion should be granted.

The requirements for recovery under a claim for intentional infliction of emotional distress are addressed in the second restatement on torts, which provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results' from it, for such bodily harm." Restatement (Second) of Torts, § 46(1) (1964).

In addition, the comments to the restatement provide further instruction. Comment d to section 46 explains that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, *as to go beyond all possible*

389

*bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.* at § 46 cmt.d (emphasis added). Additionally, comment h instructs that "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]" *Id.* at § 46 cmt. h.

Virgin Islands' cases applying § 46 within the summary judgment context have held that the cause of action can not be maintained unless the plaintiff *"provide[s] a record which shows . . . conduct 'so outrageous that no reasonable person in a civilized society would be expected to endure it.'" Pemberton Sales & Serv., Inc. v. Banco Popular de Puerto Rico,* 877 F. Supp. 961, 967 (D.V.I. 1994) (quoting *Petersen v. First Federal Savings and Loan Ass'n,* 617 F. Supp. 1039 (D.V.I. 1985)) (emphasis added). Since in the instant matter Claytor failed to provide any record evidence of outrageous behavior by the defendant, his claim for emotional distress must be dismissed.

While Claytor's complaint contains a general assertion that defendant Locke verbally abused him on a daily basis, an examination of the record reveals proof of only one specific instance of alleged abuse: Locke's threat to Claytor that if the defendant's instructions were not followed, Claytor would find himself working as a "beach boy" at the hotel. Although this statement may be considered both threatening and insulting, it fails to rise to the level of outrageousness essential to recover in tort. Comment d to § 46 provides, in pertinent part, that:

> [L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

RESTATEMENT (SECOND) TORTS § 46(1) cmt. d. In the instant matter, even viewing Locke's statement in the light most favorable to the plaintiff, the court finds that the conduct complained of can not reasonably be deemed "outrageous," but rather falls into that

390

category of "rough language" that courts require plaintiffs to endure.

■ In addition to Locke's statement, plaintiff cites to Roth's filing of suit against Locke in the Territorial Court as further evidence of outrageous conduct by the defendants. (*See* Pl[.'s] Br. at 13). The Court, however, rejects this contention. The relationship of the lawsuit to Claytor was peripheral: he was not a named party in the suit, nor was he a central figure in the litigation. Thus, the suit's impact upon Claytor would best be described as tangential, and therefore it can not reasonably be considered either 'intentional' or 'extreme and outrageous.' Accordingly, the Court concludes that, due to plaintiff's inability to provide sufficient evidence of 'outrageous' conduct, the defendants' motion for summary judgment seeking dismissal of plaintiff's claim for intentional infliction of emotional distress is granted.[7]

## III. CONCLUSION

For the above stated reasons, defendants' motion for summary judgment is granted in part and denied in part; and the plaintiff's crossmotion for summary judgment is denied.

### SUMMARY JUDGMENT

THIS MATTER having come before this Court on Defendants CHENAY BAY BEACH RESORT D/B/A INVERNESS HOTEL CORP. ("Inverness") and PETER LOCKE's Motion for Summary Judgment against Plaintiff GREG F. CLAYTOR ("Claytor"); and on Plaintiff's Crossmotion for Summary Judgment against the Defendants; The Court having reviewed the record and the submissions of the parties; and For the reasons stated in the Court's opinion of this date;

---

[7] The Court notes that the plaintiff's brief included a separate argument that pursuant to Rule 56(f) (which allows the Court to grant a continuance of the motion for purposes of further discovery) summary judgment should not be granted. (*See* Pl[.'s] Br. at 12). The Court rejects plaintiff's argument with respect to the instant claim, finding that the necessary evidence at issue (i.e. facts dealing with exchanges between Locke and Claytor) was at all times within the plaintiff's province, thereby precluding Rule 56(f)'s applicability.

IT IS this 30th day of December, 1999 HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED with respect to dismissal of plaintiff's claims for wrongful discharge and intentional infliction of emotional distress;

AND IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is DENIED with respect to plaintiff's breach of contract and breach of duty of good faith claims;

AND IT IS ALSO ORDERED that the Plaintiff's Crossmotion for Summary Judgment is DENIED.