

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-27-2004

# Berry v. Jacobs IMC LLC

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3776

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Berry v. Jacobs IMC LLC" (2004). *2004 Decisions.* Paper 678.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/678

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3776

JAMES BERRY,
                    Appellant

v.

JACOBS IMC, LLC

APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX
D.C. Civil No. 01-cv-00007
District Judge:  The Honorable Raymond L. Finch, Chief Judge

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2004

Before: BARRY, AMBRO, and SMITH, <u>Circuit Judges</u>

(Opinion Filed: May 27, 2004)

OPINION

BARRY, <u>Circuit Judge</u>

Plaintiff James Berry brought suit against defendant Jacobs Industrial Maintenance

Company, LLC ("Jacobs") alleging various forms of employment discrimination and

breach of contract, in violation of federal and territorial law. The District Court granted summary judgment in favor of Jacobs. Plaintiff appeals, and we will affirm.

## I.

Plaintiff, an African-American male, was employed by Jacobs as a mechanical troubleshooter from August 1999 to September 2000. Jacobs was formed in August 1999 to provide various services, such as maintenance and construction for the HOVENSA oil refinery. Prior to this employment, plaintiff worked as an off site superintendent for the Virgin Islands Industrial Maintenance Company, LLC ("VI IMC"), a contractor that provided services to the HOVENSA refinery before Jacobs was created in 1999.

In August 1999, representatives of Jacobs gave a presentation to prospective job applicants. Plaintiff alleges that during the question and answer session, he asked a Jacobs representative about the pay rates and employment positions offered at Jacobs. Although plaintiff did not recall the representative's exact words, he interpreted them to mean that successful applicants would not be given a pay cut or be demoted from their current positions at their respective companies if they chose to work for Jacobs.

Plaintiff then accepted a position at Jacobs as a mechanical troubleshooter. According to him, this new position constituted a demotion from his former position at VI IMC because it was not supervisory in nature. He admitted, however, that the mechanical troubleshooter position had not existed at VI IMC. In addition, plaintiff's salary at Jacobs was at least equal to what he had made at VI IMC. He also received a housing allowance

from Jacobs, which he had not received while employed at VI IMC. Moreover, he acknowledged that the exact position he had occupied at VI IMC did not exist at Jacobs. The position at Jacobs that most closely resembled his former position was that of a terminal zone supervisor, which was filled by Val Richardson, a black West Indian employee. Daryl Kramer, Routine Maintenance Manager of Jacobs, stated that he had considered plaintiff for the position of a terminal zone supervisor, but hired Richardson instead because Richardson "had excellent credentials and experience and was highly regarded by his colleagues at IMC and HOVENSA." (A72).

In June 2000, plaintiff asked Ken Lawson, General Manager of Jacobs, about opportunities to be promoted to a superintendent's position. Lawson informed plaintiff that he did not believe that he was qualified. According to Lawson, he had been told that plaintiff was not working a 40-hour week, and had a problem with absenteeism. In September 2000, plaintiff resigned from Jacobs and accepted a position as an operator trainee at HOVENSA.

Plaintiff then brought suit in the United States District Court for the Virgin Islands against Jacobs alleging (1) employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 and the Virgin Islands Civil Rights Act; (2) breach of contract; (3) intentional infliction of emotional distress or, in the alternative, negligent infliction of emotional distress; (4) pattern and practice of racial discrimination against black employees; and (5) constructive discharge, in violation of the Virgin Islands Wrongful

3

Discharge Act. Jacobs moved for summary judgment. In support of its motion, it filed the deposition transcript of plaintiff, and affidavits of General Manager Lawson and Routine Maintenance Manager Kramer. Plaintiff did not oppose the motion.

In an order dated April 9, 2003, the District Court granted Jacobs's motion, and plaintiff moved for reconsideration. The District Court denied the motion for reconsideration on August 11, 2003. Plaintiff filed a notice of appeal, which stated that he was appealing from the order denying his motion for reconsideration. We have jurisdiction pursuant to 28 U.S.C. § 1291, and will affirm the orders of the District Court.

## II.

In his brief to us, plaintiff contends that the District Court erred (1) in granting summary judgment to Jacobs because it failed to consider all the evidence in the record; and (2) in denying plaintiff's motion for reconsideration. Jacobs, in response, argues that the notice of appeal failed to designate the April 9, 2003 order granting summary judgment; rather, the notice indicated only that plaintiff was appealing from the August 11, 2003 order denying the motion for reconsideration.

Federal Rule of Appellate Procedure 3(c)(1)(B) requires that the notice of appeal "designate the judgment, order, or part thereof being appealed." Although plaintiff did not specify the order granting summary judgment in his notice of appeal, his failure to do so "is not fatal because a policy of liberal construction of notices of appeal prevails" in this Court. Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 202 n.1 (3d Cir. 2001).

4

We may exercise jurisdiction over orders not designated in the notice "if there is a connection between the specified and unspecified order, the intention to appeal the unspecified order is apparent and the opposing party is not prejudiced and has a full opportunity to brief the issues." Williams v. Guzzardi, 875 F.2d 46, 49 (3d Cir. 1989).

Here, those requisites have been met. The "specified order" denying the motion for reconsideration is predicated upon the "unspecified order" granting summary judgment. See, e.g., Lusardi v. Xerox Corp., 975 F.2d 964, 972 (3d Cir. 1992). Moreover, Jacobs has not been prejudiced by plaintiff's failure to note the summary judgment order in the notice of appeal; indeed plaintiff's intent to challenge that order was apparent in his motion to reconsider, and both parties have fully briefed the issue of whether summary judgment was warranted. Thus, we have jurisdiction over both the order granting summary judgment, and the order denying the motion for reconsideration.

We will first address the order of summary judgment. Our review of a grant of summary judgment is plenary. Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact," and where, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Id. Even if the non-moving party does not respond to the motion, summary judgment should be granted only when it is

5

appropriate.  See Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

Plaintiff first argues that the grant of summary judgment on his race discrimination claim was erroneous.  To succeed on a Title VII claim, a plaintiff must initially establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for an open position; and (3) nonmembers of the protected class were treated more favorably.  See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).  Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  Id.  If the defendant meets its burden of persuasion, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).  A plaintiff may prove pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence."  Id. at 413 (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997)).  He may also defeat a motion for summary judgment if he demonstrates that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

6

Plaintiff did not set forth a *prima facie* case of discrimination. He did not come forward with evidence demonstrating that nonmembers of the protected class were given more favorable treatment. The position at Jacobs which most closely resembled his former position – terminal zone supervisor – was held by a black employee, Val Richardson. Moreover, as for his request for a promotion to the position of superintendent, he did not produce evidence showing that he was qualified.

Even if we assume that plaintiff made out a *prima facie* case, Jacobs has satisfied its burden of articulating a legitimate, nondiscriminatory reason for its actions. Jacobs claimed that it hired Richardson over plaintiff as the terminal zone supervisor based on the feedback it received from Richardson's previous supervisor, and because of Richardson's "excellent credentials and experience." In addition, Jacobs's general manager provided a valid reason for believing that plaintiff was not qualified for a promotion: he routinely saw plaintiff's name on reports of those leaving work early, and had been informed that he was not working a 40-hour week. Plaintiff, in turn, has not offered any evidence beyond his own conclusory allegation that Jacobs discriminated against him based on race. Thus, there was insufficient evidence to support the claim of pretext, and the District Court did not err in granting summary judgment on the race discrimination claim.[1]

---

[1]Plaintiff also alleges that Jacobs's actions violated the Virgin Islands Civil Rights Act. He does not, however, specify the violations claimed. Thus, we will assume that his Virgin Islands claim mirrors his Title VII claim. For the reasons stated previously,

Plaintiff next contends that Jacobs was not entitled to summary judgment on his breach of contract claim. According to plaintiff, he accepted employment at Jacobs because he was offered a housing allowance of $1,500 per month, grossed up to $2,300 for Virgin Islands tax purposes. Plaintiff signed the memorandum of understanding, dated September 10, 1999, which set forth the terms of the housing allowance. He argues that although the housing allowance was to continue for as long as he was employed at Jacobs, Jacobs breached this contract when it issued an amended memorandum of understanding on November 5, 1999, which limited the housing allowance to a maximum period of 24 months.

We reject this argument. The original memorandum of understanding did not guarantee housing allowances to employees for the full duration of their employment at Jacobs. Rather, the memorandum explicitly provided that "[t]he terms and conditions stated in this assignment letter are based on current project schedules and requirements and therefore could be subject to change." (A284). Jacobs's issuance of the amended memorandum, therefore, did not constitute a breach of contract.

Plaintiff also asserts that he established sufficient facts indicating intentional infliction of emotional distress or, in the alternative, negligent infliction of emotional distress. We disagree. With respect to his claim of intentional infliction of emotional

plaintiff failed to produce sufficient evidence to survive summary judgment on this claim. See, e.g., Matheson v. Virgin Islands Cmty. Bank, Corp., 297 F. Supp. 2d 819, 832 (D.V.I. 2003).

distress, there is nothing in the record to support a finding that Jacobs's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965); see also Claytor v. Chenay Bay Beach Resort, 79 F. Supp. 2d 577, 583 (D.V.I. 2000); Manns v. Leather Shop, Inc., 960 F. Supp. 925, 930 (D.V.I. 1997). As for the claim of negligent infliction of emotional distress, plaintiff did not produce evidence that he suffered any sort of an injury as a result of Jacobs's conduct, or that it was reasonably foreseeable that Jacobs's conduct would result in such injury. See Restatement (Second) of Torts § 313 (1965); Anderson v. Gov't of the Virgin Islands, 180 F.R.D. 284, 287 (D.V.I. 1998).

Summary judgment was also properly granted on the claim of pattern and practice of race discrimination. Although plaintiff claims that Jacobs engaged in a pattern and practice of discrimination, the acts alleged by him were, at most, isolated or sporadic. See United States v. Lansdowne Swim Club, 894 F.2d 83, 88 (3d Cir. 1990) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977)). There was no evidence showing that racial discrimination was Jacobs's "standard operating procedure – the regular rather than the unusual practice." Id. The alleged acts, therefore, do not rise to the level required for a finding of pattern and practice of discrimination.

Finally, the District Court did not err in granting summary judgment on the claim brought under the Virgin Islands Wrongful Discharge Act. To succeed in establishing a

claim for constructive discharge, a plaintiff must demonstrate that the working conditions were "so unpleasant or difficult that a reasonable person in the employee's shoes would resign." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d. Cir. 1992) (quotations and citations omitted). Plaintiff made no such demonstration.

## III.

Plaintiff also appeals the District Court's order denying his motion for reconsideration. According to him, the District Court erred in failing to consider the evidence in the record when it granted summary judgment to Jacobs. The denial of a motion for reconsideration is reviewed for abuse of discretion, but "if the court's denial was based upon the interpretation and application of a legal precept, review is plenary." Le v. Univ. of Pa., 321 F.3d 403, 405-06 (3d Cir. 2003) (quoting Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 333 (3d Cir. 1985)).

> The standard plaintiff must meet to prevail on a motion for reconsideration is high:
>
> a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Cafe *ex rel.* Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). Plaintiff does not allege that the controlling law has changed, or that there was new evidence. Thus, he must demonstrate that the order of the District Court constituted a clear error, or resulted in manifest injustice. It did not. The grant of

10

summary judgment was proper, and we will affirm the order denying the motion for reconsideration.

## IV.

For the foregoing reasons, we will affirm the April 9, 2003 order of the District Court granting summary judgment to Jacobs, and the August 11, 2003 order denying plaintiff's motion for reconsideration.