**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2499
_____

CARL GREENE,

Appellant,

v.

VIRGIN ISLANDS WATER & POWER AUTHORITY,
ALBERTO BRUNO-VEGA
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 1-06-cv-00011)
District Judge: Hon. John E. Jones, III
_____

Argued December 12, 2013

BEFORE: FISHER, COWEN AND NYGAARD,  Circuit Judges

(Filed: February 11, 2014)

Rhea R. Lawrence, Esq. (Argued)
Lee J. Rohn, Esq.
Lee J. Rohn & Associates
1101 King Street
Christiansted, VI 00820

    Counsel for Appellant

Simone R.D. Francis, Esq.
Micol L. Morgan, Esq. (Argued)

Ogletree, Deakins, Nash, Smoak & Stewart
1336 Beltjen Road, Suite 201
St. Thomas, VI 00802

      Counsel for Appellees

_____

OPINION

_____

COWEN, <u>Circuit Judge</u>.

The plaintiff-appellant, Carl Greene, filed suit in the District Court of the Virgin Islands in 2006, raising claims against his former employer, the Virgin Islands Water and Power Authority ("WAPA"), and WAPA's Chief Executive Officer ("CEO"), Alberto Bruno-Vega. The operative pleading, the Third Amended Complaint, was filed in March of 2009. Its clarity was undermined by a kitchen-sink approach. Nevertheless, a fair reading of the Third Amended Complaint shows that Greene alleged:

- in Count I that WAPA violated Title VII by discriminating against him on the basis of his race and/or national origin;

- in Count II that both WAPA and Bruno-Vega violated his rights under the Virgin Islands Civil Rights Act;

- in Count III that WAPA violated Title VII by both (a) creating and maintaining a hostile work environment, and (b) as alleged in Count I, discriminating against him on the basis of his race and/or national origin;

- in Count IV that both WAPA and Bruno-Vega defamed him;

2

-       in Count V that both WAPA and Bruno-Vega unlawfully retaliated against him for exercising his First Amendment rights;

-       in Count VI that WAPA violated the Virgin Islands Whistleblower Act;

-       in Count VII that WAPA committed breach of contract;[1]

-       in Count IX that both WAPA and Bruno-Vega committed an abuse of process and/or engaged in malicious prosecution;

-       in Count X that both WAPA and Bruno-Vega had either negligently or intentionally inflicted emotional distress upon him;

-       in Count XII that both WAPA and Bruno-Vega denied him the due process afforded by the Fourteenth Amendment; and

-       in Count XIII that both WAPA and Bruno-Vega denied him the equal protection rights afforded by the Fourteenth Amendment.[2]

Greene sought "damages as they may appear" (J.A. 172), and, in Count XI, set forth a specific demand for punitive damages. He did not seek prospective injunctive relief.

The parties engaged in roughly three and a half years of discovery. WAPA and Bruno-Vega then filed separate motions for summary judgment, and Greene enjoyed ample time to respond to each of their arguments. Following that motion practice, the

---

[1] The Third Amended Complaint did not contain a Count VIII.

[2] Greene also raised Count XIV, alleging that Bruno-Vega "acted under color of law" when violating his rights under to 42 U.S.C. § 1983 ("Section 1983"). (J.A. 172.) It appears that Count XIV should be read in conjunction with Counts V, XII, and XIII.

District Court entered judgment against Greene and in favor of WAPA on Counts II, III, IV, V, VI, VII, X, XI, XII, and XIII, and entered judgment against Greene and in favor of Bruno-Vega on Counts II, IV, V, X, XII, XIII and XIV. Thereafter, the District Court expressed concern about the viability of Count I. It thus permitted WAPA to move anew for summary judgment, and, following briefing by both WAPA and Greene, entered judgment against Greene and in favor of WAPA on that count. Then, having resolved all of the claims over which it had original jurisdiction, the District Court dismissed the remaining counts pursuant to 28 U.S.C. § 1367(c)(3).

Greene filed a timely appeal, challenging the District Court's entry of judgment on Counts I, IV, V, VII, XII, and XIV. We have considered each of the arguments that he raises on appeal, but conclude, for the reasons appearing below, that the District Court appropriately entered judgment against him on each of those counts. Accordingly, we will affirm.[3]

## I.

As a threshold matter, we note that Greene has argued, both in his briefs and at oral argument, that the discrimination claims set forth in the Third Amended Complaint encompass a claim based on Title VII's anti-retaliation provision.[4] WAPA disputes that Greene raised such a claim, and argues that his failure to assert it in the District Court precludes him from raising related issues on appeal.

---

[3] The District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] *See* 42 U.S.C. § 2000e-3(a).

We agree with WAPA that Greene failed to raise a Title VII retaliation claim in the Third Amended Complaint, which contains two Counts that explicitly arise under other provisions of Title VII. As noted in brief, above, Greene alleged in Count I that WAPA violated Title VII because it had "a pattern and practice of discriminating against non-Hispanics in their hiring, pay, promotion, benefits, discipline and termination," and discriminated against him by, *inter alia*, terminating his employment because he was "a non-Hispanic West Indian." (J.A. 167.) Later, in Count III, he alleged that WAPA took actions amounting to both "a hostile work environment and discrimination based on race, national origin and color in violation of Title VII." (J.A. 168.)

The plain language used in both Count I and Count III belies Greene's suggestion that they encompass a Title VII retaliation claim. Such a claim arises out of a different section of Title VII and is legally distinct from the claims that Greene actually pleaded. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61, 63 (2006) ("The language of the substantive provision differs from that of the antiretaliation provision in important ways. . . . The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.").

Further, the parties' actions before the District Court belie the notion that Greene effectively amended his pleading to include a Title VII retaliation claim. It is well-settled that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." FED. R. CIV. P.

5

15(b)(2).[5] Here, Greene does not argue and we have found no evidence to suggest that WAPA explicitly consented to trying Greene's purported Title VII retaliation claim. The question, then, is whether WAPA gave its implied consent.

Neither the arguments nor the evidence presented in the District Court shows that WAPA impliedly gave such consent. This conclusion rests on two bases. First, the arguments that Greene raised in opposition to WAPA's motions for summary judgment cannot serve as an independent basis for amendment of the pleadings. *See Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996))); *see also TekDoc Servs., LLC v. 3i-Infotech Inc.*, No. 09-6573, 2013 WL 2182565, at *18 (D.N.J. May 20, 2013) (rejecting plaintiffs' attempt to amend pleadings through summary judgment briefing). Second, the evidence produced in opposition to WAPA's motions for summary judgment—the evidence that allegedly supports the purported Title VII retaliation claim—was intertwined with the evidence presented on and otherwise relevant to Greene's Title VII discrimination claim. Accordingly, it does not serve as basis for post-hoc amendment under Rule 15(b)(2). *See Addie v. Kjaer*, 737 F.3d 854, 867 (3d Cir. 2013) ("[A]n issue has not been tried by implied consent if evidence relevant to the new

---

[5] Greene has not cited to or analyzed either Federal Rule of Civil Procedure 15(b)(2) or the related body of case law. Nevertheless, we recognize that an argument concerning amendment of a pleading based on the evidence presented must be premised on that basis.

claim is also relevant to the claim originally pled, because the defendant does not have any notice that the implied claim was being tried." (citation omitted) (internal quotation marks omitted)).

Accordingly, we have not considered and will not further address arguments relating to Greene's purported Title VII retaliation claim.

## II.

With respect to the counts that are actually at issue on appeal—i.e., Counts I, IV, V, VII, and XII[6]—we will review the District Court's grant of summary judgment *de novo*, applying the same well-settled standard as the District Court. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 424-25 (3d Cir. 2013). A grant of summary judgment is proper if the moving party establishes that (1) there is no genuine dispute as to any material fact, and (2) he is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). Material facts are those that "could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citation omitted). When determining whether genuinely disputed material facts are present, we must view the evidence in the light most favorable to the non-moving party and draw all fair and reasonable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Meditz v. City of Newark*, 658 F.3d 364, 369 (3d Cir. 2011).

---

[6] One could argue that Count XIV is also at issue. However, our treatment of Counts V and XII subsumes any need for separate treatment of Count XIV.

7

The non-moving party bears the burden of producing at least some evidence to support each element of the claims at issue. *See* FED. R. CIV. P. 56(c)(1)(A). He must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, speculation, conjecture, and the inferences drawn therefrom will not defeat a motion for summary judgment. *See, e.g.*, *Lamont*, 637 F.3d at 182.

## III.

Greene alleged in the Third Amended Complaint that WAPA violated Title VII by terminating his employment as a WAPA line supervisor based on his race and/or national origin, despite WAPA's assertion that he was fired because he improperly diverted (i.e., stole) WAPA resources for use at his personal residence. Upon WAPA's first motion for summary judgment, the District Court concluded that Greene set forth a *prima facie* claim of employment discrimination and held Count I over for trial. However, as noted above, the District Court later reexamined the issue, and questioned whether Greene could show that his employment at WAPA was terminated under circumstances that could give rise to an inference of discrimination.

WAPA thus moved anew for summary judgment and, in opposition, Greene introduced evidence of WAPA's employment of Ray Belardo and Hector Mercado. Both Belardo and Mercado were Hispanic, and both supervised employees suspected of either diverting or otherwise stealing WAPA resources. The District Court considered that evidence, but nevertheless reserved course. It entered judgment on Count I against

8

Greene and in favor of WAPA, concluding as a matter of law that Greene could not establish that the termination of his employment occurred under circumstances that could give rise to an inference of discrimination. This is the only conclusion related to Count I that is challenged on appeal.[7]

Because Greene did not provide direct evidence of discrimination, our inquiry is governed by the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Burton*, 707 F.3d at 425-26; *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* claim of employment discrimination by a preponderance of the evidence. *Sarullo*, 352 F.3d at 797. That burden may be met by establishing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position that he sought to retain; (3) the plaintiff suffered an adverse employment action, e.g., the termination of his employment; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. *See*

---

[7] In his brief, Green asserts without explanation that the District Court's resolution of WAPA's second motion for summary judgment constitutes a "violation of the law of the case, which is an independent reversible error." (Br. at 50.) His passing reference to the law of the case doctrine is insufficient to bring the issue before this Court. *See* FED. R. APP. P. 28(a)(8); *Kach v. Hose*, 589 F.3d 626, 642 (3d Cir. 2009). Nevertheless, we note that the law of the case doctrine is "an amorphous concept" that "directs a court's discretion" but "does not limit [its] power." *Pepper v. United States*, 131 S.Ct. 1229, 1250 (2011) (citation omitted) (internal quotation marks omitted). "Accordingly, the doctrine does not apply if the court is convinced," as the court appears to have been convinced here, "that its prior decision is clearly erroneous and would work a manifest injustice." *Id.* (citations omitted) (internal quotation marks and brackets omitted).

*Burton*, 707 F.3d at 426; *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). "The facts necessary to establish a *prima* facie case of discrimination under Title VII vary depending on the particular circumstances of each case." *Sarullo*, 352 F.3d at 797 n.7 (citation omitted). To establish the fourth element, a plaintiff may either: (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action. *See id.*

The District Court concluded that Green had not established a *prima facie* claim of employment discrimination because he failed to satisfy the fourth element. It concluded that neither Belardo nor Mercado were comparators. It also concluded that Greene failed to introduce other competent evidence that his employment was terminated under circumstances that could give rise to an inference of discrimination. Having reviewed both the record and the parties' arguments on appeal, we agree with the District Court.

Greene established that he was a black West Indian and that both Belardo and Mercado were Hispanic, and were thus members of a different protected class. However, he failed to show that those individuals were valid comparators because he failed to show that they were similarly situated. Two findings underlie this conclusion. First, both Belardo and Mercado worked in a different department and had at least somewhat different responsibilities than Greene. That alone suggests that neither was similarly situated to Greene. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir.

10

2013) (concluding that plaintiff failed to raise necessary inference of discrimination, as "an employee who holds a different job in a different department is not similarly situated"). Nevertheless, another, weightier distinction lies: the evidence, viewed in the light most favorable to Greene, shows that Greene was suspected of diverting WAPA resources, whereas Belardo and Mercado merely supervised employees who were suspected of diverting or stealing WAPA resources. Because Belardo and Mercado were not accused or suspected of the same wrongdoing as Greene, they were not similarly situated to him and were not valid comparators.

Greene otherwise failed to produce evidence that could give rise to an inference of discrimination because the evidence that he produced could not establish a causal nexus between the termination of his employment and his membership in a protected class. The evidence actually produced amounts to a "collection of stray remarks and unconnected, coincidental circumstances," *Greene v. V.I. Water & Power Auth.*, No. 06-11, 2013 WL 2279350, at *3 (D.V.I. May 22, 2013), and related speculation and conjecture. Even in sum, and considered in the light most favorable to him, such evidence "does not a causal nexus make." *Id.*; *see also Lamont*, 637 F.3d at 182 ("[T]he party opposing summary judgment . . . must point to evidence . . . that creates a genuine dispute of material fact, 'and may not rely simply on the assertion that a reasonable jury could discredit the opponent['s] account.'" (citation omitted)).[8]

---

[8] Because we conclude that Green did not establish a *prima facie* case of employment discrimination, we need not address his arguments that concern pretext.

Greene raised several counts against WAPA and Bruno-Vega for alleged deprivations of his constitutional rights. Only Counts V and XII remain at issue on appeal.[9] In Count V, Greene alleges that WAPA and Bruno-Vega unlawfully retaliated against him for exercising his First Amendment rights. In Count XII, he alleges that WAPA and Bruno-Vega deprived him of his Fourteenth Amendment right to due process.

The District Court granted the defendants' separate summary judgment motions upon Counts V and XII, concluding in pertinent part that Counts V and XII: (1) could not be raised against WAPA, which was not a "person" under Section 1983; (2) could not be raised against Bruno-Vega, insofar as he was sued in his official capacity because he, like WAPA, was not a "person" under Section 1983; and (3) were not raised against Bruno-Vega in his individual capacity. For the following reasons, we will affirm each of those rulings.

### A. Greene Waived the Argument that Either WAPA or Bruno-Vega (in His Official Capacity) was a "Person" Under Section 1983

Section 1983 permits an aggrieved individual to bring an action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution

---

[9] Greene did not explicitly raise Counts V or XII under Section 1983, but both the parties and the District Court treated them as though they had been. Thus, pursuant to Federal Rule of Civil Procedure 15(b)(2), we will treat them as claims brought pursuant to Section 1983, alleging violations of the First Amendment and Fourteenth Amendments.

and laws." 42 U.S.C. § 1983. It is well-settled that neither a territory nor a territorial officer, acting in his or her official capacity, is a "person" under Section 1983 when sued for retrospective damages. *See McCauley v. Univ. of the V.I.*, 618 F.3d 232, 240-41 (3d Cir. 2010); *Brow v. Farrelly*, 994 F.2d 1027, 1037 n.12 (3d Cir. 1993).

Before the District Court, both WAPA and Bruno-Vega, as the CEO of WAPA, argued that they were not persons under Section 1983.[10] In his opposition to both motions, Greene failed to address that argument. Thus, on appeal, WAPA and Bruno-Vega argue that Greene has waived his opportunity to do so. But Green argues that "the fact that [he] didn't waste briefing space arguing a point [that] the District Court considered settled [should not] deprive [him] of *de novo* review of the issue now." (Reply Br. at 12.)

We disagree with Greene. Allowing him to raise his argument for the first time on appeal would violate well-settled principles of waiver. *See Birdman v. Office of the Governor*, 677 F.3d 167, 173 (3d Cir. 2012) ("It is axiomatic that 'arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.'" (quoting *Tri-M Grp., LLC v.*

---

[10] WAPA, Bruno-Vega, and ultimately the District Court cited *Eddy v. V.I. Water & Power Auth.*, 955 F. Supp. 468, 476 (D.V.I. 1997) for the proposition that neither WAPA nor a WAPA official is a person under Section 1983. *See Greene v. V.I. Water & Power Auth.*, No. 06-11, 2011 WL 3032466, at *6 (D.V.I. July 22, 2011). This Court has not yet had occasion to examine that holding, which is often cited without further analysis by the District Court of the Virgin Islands. *See id.*; *Wilson v. V.I. Water & Power Auth.*, No. 07-24, 2010 WL 5088138, at *9 (D.V.I. Dec. 7, 2010), *aff'd*, 470 F. App'x 72 (3d Cir. 2012); *Holder v. V.I. Water & Power Auth.*, No. 1997-220, 2001 WL 1112190, at *2 (D.V.I. Sept. 17, 2001).

*Sharp*, 638 F.3d 406, 416 (3d Cir. 2011))). "This general rule serves several important judicial interests, protecting litigants from unfair surprise; promoting the finality of judgments and conserving judicial resources; and preventing district courts from being reversed on grounds that were never urged or argued before them." *Tri-M Grp.*, 638 F.3d at 416 (citation omitted) (brackets omitted). Greene has not argued or otherwise shown that any of the exceptional circumstances discussed in *Birdman* and *Tri-M Group* exist here. Indeed, it appears that he cannot. Allowing him to raise his argument for the first time on appeal would contravene at least two of the interests identified in *Tri-M Group*.

Greene also appears to argue that because the issue was raised below, his argument was preserved for appeal. Again, we disagree. The District Court's consideration of an issue does not automatically preserve all potentially related arguments for this Court's consideration. *See United States v. Joseph*, 730 F.3d 336, 340-42 (3d Cir. 2013).[11]

**B.    Greene Did Not Bring Suit Against Bruno-Vega in Bruno-Vega's Individual Capacity**

Greene argues that the District Court erred when it concluded that he failed to sue Bruno-Vega in his individual capacity. But the content of the operative pleading, the

---

[11] We are cognizant that the rule expressed in *Joseph* arose in the context of a criminal proceeding; it concerned the defendant's arguments upon his suppression motion and related but not identical arguments raised on appeal. Nevertheless, we see no reason to refrain from applying it in this context. *Joseph* simply reinforces distinctions between issues and arguments that have been recognized in civil appeals. *Compare Huber v. Taylor*, 469 F.3d 67, 74-75 (3d Cir. 2006) ("This court may consider a pure question of law even if not raised below where refusal to reach the issue would result in a miscarriage of justice or where the issue's resolution is of public importance." (citation omitted)), *with, e.g.*, *Birdman*, 677 F.3d at 173.

Third Amended Complaint, supports the District Court's conclusion. Its caption names "Alberto Bruno-Vega" without specifying whether Bruno-Vega was sued in his official capacity, his individual capacity, or both. The remainder of the pleading is more informative. Through the nearly two hundred numbered paragraphs that follow, Greene identifies Bruno-Vega as the CEO of WAPA, details the actions Bruno-Vega took in that capacity, and sets forth the factual (and, to a more limited extent, the legal) bases for his claims.

The District Court, upon review of the Third Amended Complaint and the evidence produced during summary judgment proceedings, concluded that "neither the [Third Amended C]omplaint nor the course of the proceedings has provided Bruno-Vega with adequate notice that he is being sued in his individual capacity." *Greene*, 2011 WL 3032466, at *7. We agree. Because Greene failed to allege in the Third Amended Complaint or, later, to produce evidence tending to show that Bruno-Vega committed any wrongful acts in his individual capacity, the District Court correctly concluded that he was sued only in his official capacity. *See McCauley*, 618 F.3d at 239-40.

## V.

In Count IV, Greene alleged that both WAPA and Bruno-Vega defamed him by telling employees that he had been fired because he had diverted WAPA resources. The District Court entered judgment on this claim against Greene and in favor of both WAPA and Bruno-Vega, concluding that the evidence relied on by Greene—a series of affidavits from and depositions taken of other WAPA employees—was inadmissible hearsay.

On appeal, Greene specifically argues that two documents submitted below were admissible and support his claim: the transcript of the deposition of Cassandra Dunn, and the belatedly submitted affidavit of Jose M. Santos. For the reasons that follow, we conclude that: (1) the District Court properly excluded both documents from evidence; and (2) without these documents, Greene lacked evidentiary support for Count IV.

## A.    The Dunn Deposition

Greene cites the Dunn Deposition for Dunn's description of "rampant" "rumors and gossip" about the termination of his employment and the cause underlying that termination. (Br. at 62; Reply Br. at 24.) The Dunn Deposition reveals the following exchange:

Q    Did any of the WAPA employees ever have any discussions with you about what was or was not found at Mr. Greene's house?
A    No more than the usual rumor chat that was around, you know. I didn't know a whole lot outside of, you know, my – what I considered confidential conversations with Mr. Greene, so I wasn't able to be a part of any rumor or conversation.
Q    So, you did hear gossip?
A    It was gossip.
Q    Okay, and can you give me a sense of what kinds of things were being generated through the gossip mill, or the rumor mill?
A    Well, you know, some of the same, he shouldn't have done it or he didn't do it. Both.
Q    Can you identify for me any of the individuals that you heard engaging in that kind of gossip about Mr. Greene?
A    I can't remember. You know, general employees. I can't remember who.
Q    If you can't recall the names of the employees, can you recall the positions that any of the employees held that were engaged in this gossip?

16

A    The gossip was pretty widespread.  It could have been rank and file, it could have been management.

(J.A. 1124-25.)

The District Court concluded that the relevant portions of all properly produced documents, including this excerpt from the Dunn Deposition, constituted inadmissible hearsay, noting that while "comments made by unnamed employees could fall under the 'party agent' exception of FED. R. EVID. 801(d)(2)(D), as the unnamed declarant cannot be identified there is not a sufficient evidentiary foundation to establish the existence of an agency relationship as required under" that Rule.  *Greene*, 2011 WL 3032466, at \*10 (citation omitted) (some internal quotation marks omitted).

Greene argues that Dunn's deposition testimony is circumstantial evidence that Bruno-Vega made defamatory statements to other employees.  But he had not challenged the District Court's conclusion that her statements constitute inadmissible hearsay.  Because he had not challenged the District Court's legal conclusion, because it appears that the District Court's conclusion was premised on a permissible view of the law, and, most importantly, because it appears that the District Court correctly decided the issue, we will not consider the Dunn Deposition on appeal.[12]

---

[12] "To the extent the district court's admission of evidence was based on an interpretation of the Federal Rules of Evidence, our standard of review is plenary.  But we review the Court's decision to admit the evidence if premised on a permissible view of the law for abuse of discretion."  *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 132-33 (3d Cir. 2004) (citation omitted)

17

**B.     The Santos Affidavit**

The issue concerning the Santos Affidavit is altogether different.  The parties completed their briefing upon WAPA's and Bruno-Vega's respective summary judgment motions on May 25, 2010.  Forty-two days later, on July 6, 2010, Greene filed the Santos Affidavit as additional opposition to those motions.  The record suggests that Greene failed to procure the District Court's permission to belatedly supplement his opposition, in violation of local civil rules.  *See* D.V.I. L. CIV. R. 56.1(b) (requiring respondent to "file a response, brief, affidavits and other supporting documents within twenty (20) days of the filing of the motion"); D.V.I. L. CIV. R. 7.1(a) ("Only a motion, a response in opposition, and a reply may be served on counsel and filed with the Court; further response or reply may be made only by leave of Court obtained before filing (counsel will be sanctioned for violation of this limitation).").  On July 12, 2010, the defendants jointly filed a motion to strike the Santos Affidavit or, in the alternative, for leave of court to file a sur-reply ("the Motion").  The Motion was denied on July 22, 2011, in the same Memorandum Opinion and Order that resolved the outstanding summary judgment motions.

The text of the July 22, 2011 Memorandum Opinion and Order suggests that the District Court did not consider the Santos Affidavit.  As noted above, the District Court concluded that the relevant portions of all properly produced documents constituted inadmissible hearsay.  It specifically noted that "comments made by unnamed employees" would not save those documents (or excerpts therefrom) from exclusion.  *Greene*, 2011

18

WL 3032466, at *10. These conclusions would not apply to the Santos Affidavit, insofar as Santos averred that Bruno-Vega directly told him that Greene was under investigation for theft, that WAPA had evidence of the theft, and that WAPA intended to terminate Greene's employment.

Based on the record, we have determined that the District Court treated the Santos Affidavit as an extraneous filing. Simply put, pursuant to the applicable local rules, the Santos Affidavit was not properly submitted and did not constitute part of the summary judgment record. "We have previously recognized that local rules play a vital role in the district courts' efforts to manage themselves and their dockets. They facilitate the implementation of court policy, both by setting norms and putting the local bar on notice of their existence, and serve to impose uniformity on practice within a district." *Knoll v. City of Allentown*, 707 F.3d 406, 411 (3d Cir. 2013) (citations omitted) (internal quotation marks omitted). "Given the vital purpose that such rules serve, litigants ignore them at their peril." *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). Because the Santos Affidavit was never properly introduced as part of the summary judgment record, the District Court was under no obligation to recognize or analyze it.[13]

Although we engage in plenary review of the District Court's grant of summary judgment, we review its decision to exclude evidence from the record only for an abuse of

---

[13] It follows that the District Court was similarly under no obligation to strike the Motion; because it was not part of the summary judgment record, there was no need to formally strike it from that record. However, that is not to say that we condone the District Court's failure to detail its rationale for denying the Motion. If that court had set forth its rationale, then this Court would not be left to reconstruct it.

discretion.  *See Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008).  Where, as here, the exercise of discretion is premised on application of local rules, the District Court is entitled to substantial deference.  *See United States v. Miller*, 624 F.2d 1198, 1200 (3d Cir. 1980).  Under these circumstances, we find no error in the District Court's decision to exclude the Santos affidavit from its consideration, and we, similarly, will not consider it now.

## VI.

On appeal, Greene specifically argues that Count VII encompasses claims that WAPA breached an employment contract by failing to fairly and impartially follow termination procedures and by breaching an implied covenant of good faith and fair dealing.  Because the parties treated Count VII as though it encompassed those claims throughout the course of litigation, we will do likewise.  *See* FED. R. CIV. P. 15(b)(2).

The District Court's treatment of Count VII rested on its conclusions that Greene failed to properly raise argument or present evidence to support his claims:

> [Greene] does not dispute that he was an at-will employee and has presented no evidence to suggest that a contract existed between WAPA and himself.  WAPA's employee manual states that it is not a contract and gives WAPA the full power to unilaterally suspend or eliminate certain procedures. . . .  Quite simply, no contract existed between [WAPA] and [Greene].

(J.A. 33.)  The District Court also concluded that because "no contract existed, any discussion of the duty of good faith and fair dealing is a blind alley."  (*Id.*)

20

Greene now argues that he "was a termination-for-cause-only employee as a matter of law" who enjoyed certain protections under WAPA's employment manual. (Br. at 62.) However, we are constrained to conclude that Greene waived any argument that his employment could be terminated only for cause. Because Greene failed to argue before the District Court that he was something other than an at-will employee—i.e., an individual whose employment could be terminated at any time, without cause—he has waived the opportunity to so argue on appeal. *See Birdman*, 677 F.3d at 173.

Further, we conclude that the WAPA employment manual did not create a contract between WAPA and Greene. Our conclusion rests, in pertinent part, on a recent holding from the Supreme Court of the Virgin Islands, *Chapman v. Cornwall*, No. 2012-32, 2013 WL 2145092, at *4 (May 15, 2013). There, the Supreme Court held that an employment manual did not create a contract between the Virgin Islands Waste Management Authority ("VIWMA") and its former employee because, in part, the former employee failed to produce evidence that the VIWMA intended to be contractually bound by the employment manual's provisions. *See id.* The same is true here. WAPA explicitly disclaimed any intent to be contractually bound by its employee manual, stating—as noted by the District Court—both that its employee manual was not a contract and that WAPA could modify or eliminate its provisions at any time.

We disagree with the District Court's conclusion that a claim for breach of the implied covenant of good faith and fair dealing may not lie in the absence of an express contract. *See, e.g.*, *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 365 (3d Cir.

21

2013).  Indeed, the Supreme Court of the Virgin Islands announced in *Chapman* that such a claim may lie in an employment relationship if the plaintiff brings forward proof that the employer: (1) "act[ed] unreasonably in contravention of [his] expectations"; and (2) took "act[ions] amounting to fraud or deceit."  *Chapman*, 2013 WL 2145092, at *5.

Indeed, Greene argues that WAPA acted unreasonably and in contravention of his expectations, and took actions amounting to fraud and deceit.  Specifically, he alleges in his brief that "Bruno-Vega . . . trumped up the reasons for [his] termination and then initiated a malicious prosecution based on false charges."  (Br. at 67.)  He fails, however, to either identify the evidence that supports these allegations or direct the Court's attention to the relevant portions of the record.  We will not expend valuable resources correcting these defects.  *See* FED. R. APP. P. 28(8)(a) (requiring, *inter alia*, "citations . . . to the parts of the record on which appellant relies"); *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011) ("Courts cannot become advocates for a party by doing for that party what the party ought to have done for him or herself.").  Therefore, we will affirm, albeit on different grounds than those set forth by the District Court.  *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 321 (3d Cir. 2013).

## VII.

For the foregoing reasons, we will affirm the judgments entered by the District Court on July 22, 2011, and May 22, 2013.