**FRANCIS X. MINA, Plaintiff**

**v.**

**HOTEL ON THE CAY TIME-SHARING ASSOCIATION, INC., WILLIAM M. DENISON, JOHN GIVIDEN, ANITA M. ROSE, HERMON MIKE, WILLIAM DANNER, WILLIAM SCRANTON, RICHARD BROAD and ANDREW PAPPAS, Defendants**

Civil No. SX-00-CV-451

Superior Court of the Virgin Islands

Division of St. Croix

April 2, 2015

223

BRADY, *Judge*

## MEMORANDUM OPINION

(April 2, 2015)

THIS MATTER is before the Court on Defendant Hotel on the Cay Time-Sharing Association Inc.'s ("HOTC") Motion for Summary Judgment and accompanying Memorandum of Law ("Motion"), filed June 7, 2004 (dated April 28, 2004);[1] Plaintiff's Opposition, filed June 12, 2004; Defendants' Reply, filed July 8, 2000; and Defendants' Supplemental Memorandum of Law in Support of Motion for Summary Judgment, filed September 14, 2010 ("Supplemental Memo"). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff filed his Verified Complaint ("Complaint") after Defendant HOTC terminated his employment as General Manager of HOTC on March 25, 2000. Motion, at 1. Plaintiff had been the General Manager

---

[1] This motion is also filed on behalf of Defendants William M. Denison, John Gividen, Anita M. Rose, Hermon Mike, William Danner, William Scranton, and Richard Broad, collectively referred to as Defendants. Defendant Andrew Pappas is not a party to this Motion and has filed a separate motion for summary judgment that is not addressed in this Memorandum Opinion.

from 1998, working pursuant to an oral contract. His duties included collecting dues; paying FICA payroll taxes, hotel room and gross receipts taxes; paying rent and managing the master ground Lease between HOTC and property owner Government of the Virgin Islands; and ensuring overall physical plant maintenance. Motion, at 4.

On February 18, 2000, the Board of Directors ("Outgoing Board") convened a special meeting with three out of four Outgoing Board members in physical attendance. At that meeting, the Outgoing Board agreed to enter into a new written Management Contract with Plaintiff, by which Plaintiff was to serve as General Manager for a term of two years. Complaint, ¶14. Plaintiff and the Outgoing Board's President signed the new Management Contract following the meeting of the Outgoing Board. Motion, at 8. Under the contract, HOTC was to increase Plaintiff's annual salary from $26,000 to $52,000 (retroactive to October 1, 1999) and other ancillary benefits such as health insurance and transportation allowances were provided to Plaintiff. Complaint, ¶15.

However, on February 18, 2000, the same day that Plaintiff signed his new Management Contract, the HOTC time-share owners held their first annual meeting in four years and elected a new Board of Directors ("New Board"). The New Board continued to pay Plaintiff's salary (at the annual rate of $26,000), while informing Plaintiff that numerous deficiencies existed with various aspects of HOTC's operations, and providing opportunity to correct those deficiencies. Motion, at 4. Following the HOTC New Board's determination that Plaintiff had failed to remedy the noted deficiencies, HOTC informed Plaintiff that he would be terminated, effective March 25, 2000. Motion, at 9.

Plaintiff also alleges that on or about March 25, 2000, Defendants spread false information about him and conducted various actions, including entering his room and removing personal effects. Complaint, ¶21. Additionally, Plaintiff claims that he expended more than $25,600 of his own money to cover HOTC expenses, which HOTC has not yet reimbursed. *See generally*, Complaint, Count III.

As a result of these and various other actions by HOTC and the individual Defendants, Plaintiff brings his Complaint alleging breach of contract, violation of the Virgin Islands Wrongful Discharge Act, and an action for debt in the amount of $26,500 against HOTC (Complaint, Counts I-III); and intentional infliction of emotion distress and defamation against all Defendants (Complaint, Counts IV and V).

## DISCUSSION

A moving party will prevail on a motion for summary judgment where the record shows that there is no unresolved genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), applicable pursuant to SUPER. CT. R. 7; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The reviewing court must determine whether there exists a dispute as to a material fact, the determination of which will affect the outcome of the action under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Such a dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* In analyzing the evidence, the court must consider the pleadings and full factual record, drawing all justifiable inferences in favor of the nonmoving party, to determine whether the movant has met its burden of showing that there is no unresolved genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

A party opposing a motion for summary judgment may not rest upon the allegations or denials within its pleadings, but must set forth specific facts showing that there is a genuine issue for trial, such that the jury or judge as fact finder could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record . . ." FED. R. CIV. P. 56(c)(1)(A). *See also Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008), citing Rule 56(e) prior to its 2010 amendment. "As to materiality, only those facts that 'might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).

### I. Defendant HOTC is entitled to summary judgment on Count I of Plaintiff's Complaint — Breach of Contract

#### a. *There are no genuine issues of material fact in dispute.*

Defendant HOTC argues that the Management Contract was never implemented by the Outgoing Board, because no resolution was ever formally approved at the February 18, 2000 meeting, the Board did not provide sufficient notice of the meeting to the timeshare unit owners as

226

required under the HOTC bylaws, and that non-attending Outgoing Board member Robert Shaughnessy was not properly notified of the special meeting as required by the bylaws. Motion, at 9. Therefore, Defendant HOTC contends that no valid written employment contract between Plaintiff and HOTC was ever properly approved, making Plaintiff an at-will employee pursuant to the terms of the existing oral agreement between HOTC and Plaintiff.

HOTC further argues that, even if the Management Contract did otherwise constitute a valid contract, the contract was nonetheless void because an outgoing governing body, such as the Outgoing Board, cannot bind the hands of the successor New Board through, in this case, a two year employment contract. Supplemental Memo, at 5-6.

Finally, Defendant HOTC claims that apart from the issue of the validity of the Management Contract, the New Board had more than sufficient "good cause" to terminate Plaintiff's employment for a host of failures while he was serving as HOTC's General Manager. Motion, at 11-15; Reply, at 5; See Supplemental Memo, generally, at 7-8.

Plaintiff does not dispute the majority of Defendants' factual statements regarding the Management Contract, but focuses his opposition on the applicability of those undisputed facts to the law. The only factual dispute raised by Plaintiff concerns the sufficiency of notice of the February 18, 2000 special meeting to Outgoing Board members. Opposition, at 3-4. Plaintiff argues that ". . . every Board Member . . . had notice of the meeting . . . Bob Shaugnessy in fact testified at his deposition that he attended the February 18, 2000 meeting via teleconference because he was out of the country at the time." *Id.* at 4.

Defendant HOTC does not address this contention in its Reply, but the Court finds that this factual dispute does not relate to a genuine issue of material fact, and therefore does not preclude entry of summary judgment. The validity of the Management Contract can be decided as a matter of law based on the undisputed facts in the record.

Likewise, there are no factual disputes to prevent a ruling on Defendant HOTC's argument that the Outgoing Board cannot "bind the hands" of the successor New Board. In fact, Plaintiff does not respond to this point that is a primary focus of Defendant's Supplemental Memo. Therefore, the Court considers this argument as a matter of law.

Finally, whether HOTC had good cause to terminate Plaintiff may be a question properly left to the finder of fact. However, because the Court

adjudicates the matter on the validity of the written Management Contract, we need not review and determine the validity of HOTC's purported reasons for Plaintiff's termination.

Therefore, there are no issues of material fact in dispute regarding Plaintiff's Breach of Contract claim that prevent a ruling on Defendant HOTC's Motion as to Count I.

### b. *The Outgoing Board did not provide sufficient notice of the February 18, 2000 special meeting to the HOTC timeshare unit owners.*

■ When determining the legality of a corporation's actions, courts in the Virgin Islands examine whether the language of the corporation's bylaws "is clear and unambiguous . . . [and] we will follow their plain meaning and abstain from imputing language or interpretations that are not in accordance with their plain meaning." *Weary v. Long Reef Condominium Association*, 57 V.I. 163, 169-70 (V.I. 2012). A "corporation's by-laws establish rules of internal governance, which, like contracts and statutes, are construed according to their plain meaning within the context of the document as a whole." *Id.*, citing *Isaacs v. American Iron & Steel Co.*, 690 N.W.2d 373, 376 (Minn. Ct. App. 2004).

■ The Virgin Islands Supreme Court has held that condominium bylaws are to be regarded and enforced in the same manner as corporate bylaws. "We are mindful that both condominium associations and corporations have by-laws for many purposes, including for their internal governance and management of their affairs. Therefore, we conclude that the legal precedent on by-laws should be equally applicable to both corporations and condominium associations and not be treated differently." *Weary v. Long Reef Condominium Ass'n*, 57 V.I. at 170.

The By-Laws of the Hotel on the Cay Time-Sharing Association designate HOTC as a not-for-profit corporation and sets out the rules for governing, operating and managing HOTC. Motion, at 9. HOTC By-Laws sets out the rules governing the election, duties, etc. of the Board of Directors. Regarding notice of meetings to unit owners, the HOTC By-Laws require that "meetings of the Board shall be open to all unit owners, and notices of meetings shall be posted conspicuously forty eight (48) hours in advance for the attention of all unit owners, except in an emergency." HOTC By-Laws, Article 6, ¶K.

The Outgoing Board failed to follow the plain language of the notice requirement of Article 6, ¶K. By his silence, Plaintiff confirms that notice of the February 18, 2000 special meeting was not posted, "conspicuously" or otherwise. Plaintiff's only reference to the notice requirement is his citation to the deposition of Delores Astill, Secretary of the Outgoing Board, who testified that ". . . 10 days written notice to timeshare owners is not required for such meetings." Opposition, at 3. However, Secretary Astrill's reference is to the written notice requirement relative to notice to Directors of meetings of the Board, which notice may be waived. Plaintiff argues that the Outgoing Board members themselves had notice of the special meeting as required by By-Laws Article 6, but fails to address the 48 hour notice requirement to advise HOTC timeshare unit owners of Board meetings open to them as owners.

Second, Plaintiff does not allege that there was an emergency, which would negate the necessity of notice to unit owners, but rather notes that the Outgoing Board was meeting to "finalize" the Management Contract with Plaintiff that the Board had discussed in previous meetings. Opposition, at 3.

Defendants argue that "No notice of the board meeting was posted, and therefore, the Timeshare Unit Owners were not given an opportunity to participate in the meeting. Had notice been provided, there can be no doubt that the Timeshare Unit Owners would have objected — as evidenced by their electing an entirely new Board of Directors to run the failing hotel." Reply, at 4. The timeshare unit owners were deprived of the opportunity to raise any objection to Plaintiff's new two year contract and the doubling of his salary. As such, the timeshare unit owners were denied access to the internal governance of their organization — a corporate due process requirement clearly required by HOTC's By-Laws.

■■■ The Virgin Islands Condominium Act applies to the governance of Virgin Islands time share associations. *Pantheon Enterprises, Inc. v. Hotel on the Cay*, 41 V.I. 104, 113 (V.I. Terr. Ct. 1999). The Act requires that the administration of every property shall be governed by its by-laws. 28 V.I.C. § 917. Time share unit owners are required to "comply strictly with the bylaws" (28 V.I.C. § 906), an obligation that applies equally to the time share association's board of directors.

> The VICA also emphasizes the importance of the bylaws in condo-minium governance: Section 906 provides that '[e]ach apartment

owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto. . . .' 28 V.I.C. § 906 . . . The underlying assumption of § 906, and indeed of the entire Condominium Act, is that the board will comply with the declaration and bylaws of the condominium association. . . . [A]dherence to the bylaws [is] important in part because it must be presumed that all apartment owners purchase units in reliance on the covenants and conditions contained in the declaration and bylaws of record and on the assumption that they will be enforced.

*Frank v. Enrietto*, 597 Fed. Appx. 696, 700 (3d Cir. V.I. 2015), citation and internal quotation omitted.

■ Corporate law as well as traditions of fair play and due process dictate that condominium board of directors' meetings that fail to adhere to the notice requirements established in the condominium's by-laws are invalid and all actions taken at such meetings are void. "The purported annual meeting of stockholders on January 25th, was illegal because the notice required by the by-laws was not given. It follows that the meeting of the new board of directors on January 25th and their action in electing officers and authorizing them to execute the voluntary petition in bankruptcy was illegal." *In re Mississippi Valley Utilities Corp.*, 2 F. Supp. 995, 998 (D. Del. 1933) (*see also Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church*, 98 F.3d 78, 84 (3d Cir. 1996). ("Finding that no such notice had been given, the magistrate judge declared the Property Resolution to be the product of a procedurally defective meeting, and therefore invalid.")

■ Because the Outgoing Board failed to comply strictly by the HOTC By-Laws to give the required notice of the meeting to timeshare unit owners, the meeting and all actions taken therein were invalid, and the Management Contract approved at that meeting was void and of no effect.

### c. *It is against public policy to allow the Outgoing Board to bind the incoming Board to a long term contract.*

Plaintiff does not refute Defendant HOTC's averment that the Outgoing Board met and authorized the Management Contract, which was executed by Plaintiff, ". . . before the new board was seated that same day." Motion, at 10. As such, even if the Management Contract could

survive the Outgoing Board's failure to adhere to the notice to owners requirement, the action of the Outgoing Board in attempting to bind the incoming New Board to a multi-year employment contract is against public policy.

■ The general rule is addressed often with respect to governmental bodies, but is not so limited in its application, to the effect:

> The general rule recognized by a majority of jurisdictions is that a governmental body "may enter into contracts during [its] term of governance however, if the term of the contract extends beyond the term for which the [the governmental body] was elected[,] the ability . . . to bind subsequent [governmental bodies] is limited." 56 AM. JUR. 2D *Municipal Corporations* § 135 (2005). The policy behind such rule is also widely accepted: The obvious purpose of the rule is to permit a newly appointed governmental body to function freely on behalf of the public and in response to the governmental power or body politic by which it was appointed or elected, unhampered by the policies of the predecessors who have since been replaced by the appointing or electing power. To permit the outgoing body to "hamstring" its successors by imposing upon them a policy[-]implementing and to some extent, policymaking [sic] machinery, which is not attuned to the new body or its policies, would be to most effectively circumvent the rule.

*In re Camacho*, 2006 Guam 5, 2006 Guam LEXIS 5, *29 (March 21, 2006), citations omitted.

■ While there is some distinction between governmental and proprietary functions not relevant to this discussion, the Outgoing Board violated this "general rule" common among governing bodies. HOTC By-Laws Article 6(c) dictates that duly elected members of the Board of Directors ". . . shall serve for the term of one (1) year . . ." The action of the Outgoing Board in approving the two year Management Contract with Plaintiff on the same day that the Directors were voted out of office violated a basic tenet of corporate governance by approving a contract which would bind the successor New Board, hampering its ability to function freely on behalf of the unit owners.

■ As a result of the Outgoing Board's failure to adhere to by-law notice requirements and for the public policy considerations of its "hamstringing" the incoming New Board, the February 18, 2000

Management Contract between HOTC and Plaintiff was void *ab initio* and is not legally enforceable. Therefore, Plaintiff was an employee at will pursuant to the pre-existing oral employment agreement, terminable by either party at will. *See Greene v. Virgin Islands Water & Power Auth.*, 557 Fed. Appx. 189, 201 (3d Cir. 2014); *See also Kazimir v. General Adjustment Bureau*, 18 V.I. 124, 125 (V.I. Terr.Ct. 1982).

Because the Management Contract was of no effect, Plaintiff's breach of contract claim for HOTC's violation of its terms must fail and Defendant HOTC is entitled to summary judgment on Count I of Plaintiff's Complaint.

### II. Defendant HOTC is entitled to summary judgment on Count II of the Complaint — violation of the Virgin Islands Wrongful Discharge Act — because Plaintiff was a supervisory employee excluded by the Act.

 Defendant HOTC argues that the Virgin Islands Wrongful Discharge Act does not apply to Plaintiff because he was employed as general manager, a supervisory employee. Motion, at 8. The WDA does not apply to supervisory employees, as it is preempted as to such employees by the National Labor Relations Act. *See St. Thomas-St. John Hotel & Tourism Assoc, v. Government of U.S. Virgin Islands*, 45 V.I. 701, 707, 357 F.3d 297, 304 (3d Cir. 2004).

Plaintiff argues that it is disputed whether he was a supervisory employee because ". . . at some point after the contract, but prior to his termination, Mina's duties and responsibilities as general manager were taken away by the Board . . ." Opposition, at 2. Therefore, Plaintiff suggests that a question of fact exists as to whether he was a supervisory employee.

 A factual dispute is only genuine if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. Viewing the facts in the light most favorable to the non-moving party, there is insufficient proof in the record to show that in the one month period from the installation of the New Board to Plaintiff Mina's termination that his status changed such that he was no longer a supervisory employee. Plaintiff confirmed that he remained General Manager after the New Board was in place, and that his duties contemplated by the Management Contract were substantially the same as those he had been performing pursuant to the

original oral agreement. Motion, at 3-4. The March 2000 Newsletter sent out by the New Board confirmed Plaintiff's position, advising timeshare unit owners that "Frank Mina, General Manager, is on special assignment to help solve some of the major problems." Supplemental Memo, Exhibit D.

Plaintiff argues that the Board took away his duties and gave him new duties (Opposition, at 2). Eighteen days prior to his termination, Plaintiff was placed on probation and was given "several special assignments" requiring the "skills the Directors felt a competent General Manager must possess." Supplemental Memo, Exhibit E. Plaintiff was hired as General Manager and remained in that position until his termination. The fact that he was placed on probation and assigned special tasks requiring the skill of a competent General Manager is not sufficient evidence to permit a reasonable trier of fact to find that during the one month following the installation of the New Board that Plaintiff lost his status as a supervisory employee.

The U.S. Supreme Court has held that "an employee need only perform one of the statutory supervisory functions to qualify as a supervisor." *Warner v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 44502, at *67 (D.V.I. May 27, 2009), *citing NLRB v. Health Care & Retirement Corp. of America*, 511 U.S. 571, 573-74, 114 S. Ct. 1778, 128 L. Ed. 2d 586 (1994); *see also National Labor Relations Board v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 713, 121 S. Ct. 1861, 149 L. Ed. 2d 939 (2001) ("Employees are statutory supervisors if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment, and (3) their authority is held in the interest of the employer," listing twelve itemized areas of a supervisor's authority set out in the National Labor Relations Act 29 U.S.C. § 152(11)).

The record is without factual dispute that Plaintiff exercised authority to engage in supervisory functions, exercised independent judgment and worked in the interests of his employer throughout the course of his employment with HOTC until he was terminated on March 25, 2000. Plaintiff has failed to cite to record evidence to raise a question of fact that his duties were so revised and restricted to render him a non-supervisory employee during the one month period after the February 18, 2000 election of the New Board until his termination. Therefore, as

233

General Manager, Plaintiff was not an "employee" covered by the Wrongful Discharge Act and Defendant HOTC is entitled to summary judgment on Count II.

### III. Defendant HOTC is not entitled to summary judgment on Count III — Action for Debt.

Plaintiff claims that during his tenure as General Manager he loaned HOTC $26,500 to cover expenses that HOTC incurred but could not afford to pay at that time. In his deposition and various affidavits Plaintiff claims HOTC's indebtedness in that specific amount. He offers several documents evidencing ". . . loans made to the Association . . ." Opposition, at 8. Defendant HOTC argues on the one hand that Plaintiff cannot prove a valid debt, yet admits that "[i]t is undisputed that Mina paid several hotel expenses out of his own pocket . . ." Reply, at 6.

Defendant HOTC claims that no debt is owed to Plaintiff, arguing that Plaintiff cannot prove the existence or amount of any valid debt, or that he has not been repaid in full. *Id.* However, HOTC concedes that Plaintiff forwarded funds to third parties to cover HOTC obligations to HOTC's benefit. The facts that Plaintiff has not established at this stage how much he paid out on behalf of HOTC, how much has been repaid by HOTC and the balance owing, if any, demonstrate plainly that facts remain in dispute as to Plaintiff's claim of HOTC's indebtedness to him. These material facts in dispute require that Defendant HOTC's Motion must be denied as to this Count and Plaintiff provided the opportunity to substantiate this alleged debt at trial.

### IV. Defendants are entitled to summary judgment on Count IV — Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendants, without specifying which Defendants, intentionally inflicted emotional distress upon him. Because the individual Defendants "were all members of the Association's Board, and acted as a group," Plaintiff claims that each is "thus individually responsible for their tortious acts." Opposition, at 8. Specifically, he claims that "the Defendants instructed employees to disregard him, insinuated that he was responsible for $180,000.00 that was unaccounted for, and threatened to physically enter his apartment and take items out." *Id.* As a result of this treatment and following his termination, Plaintiff claims he suffered various ailments, including "high blood pressure, anxiety and heart problems." *Id.*

■ To survive a motion for summary judgment on this Count, Plaintiff, as the non-movant, must ". . . demonstrate that 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community,' such that 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Edwards v. Marriott Hotel Mgmt. Co. (V.I.), Inc.*, 2015 V.I. LEXIS 13, at *24 (V.I. Super. Ct. Jan. 29, 2015), *quoting* RESTATEMENT (SECOND) OF TORTS § 46, cmt. d.[2]

There do not exist any material facts relative to this Count that are disputed by either party. Plaintiff and Defendants merely dispute the application of the facts to the law of the Virgin Islands. Therefore, the Court may rule as a matter of law.

■ The acts by which Plaintiff alleges that Defendants intentionally inflicted upon him emotional distress do not meet the standard of being ". . . so outrageous in character . . . as to go beyond all possible bounds of decency . . ." Many courts have held that medical conditions, including pure emotional distress, relating to being terminated from employment do not give rise to a *prima facie* case of intentional infliction of emotional distress. *See Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 27 (1st Cir. 1997), *cert. denied* 523 U.S. 1123, 118 S. Ct. 1806, 140 L. Ed. 2d 945 (1998); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1068 (9th Cir. 2002); *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1266 (4th Cir. 1989); *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 456 (6th Cir. 1991).

■ Courts in the Virgin Islands, when reviewing intentional infliction of emotional distress claims on summary judgment, have determined that certain behavior does not meet the ". . . so outrageous . . ." standard

---

[2] This Court joins the *Edwards* Court in finding that RESTATEMENT (SECOND) OF TORTS § 46 reflects the common law of this jurisdiction. "A *Banks* analysis — and acceptance of — RESTATEMENT (SECOND) OF TORTS § 46 was conducted in *Joseph v. Sugar Bay Club & Resort, Corp.*, ST-13-CV-491, 2014 V.I. LEXIS 14, *8 (V.I. Super Mar. 17, 2014). Binding precedents have also acknowledged that the Virgin Islands recognizes a claim for intentional infliction of emotional distress and application of RESTATEMENT (SECOND) OF TORTS § 46 to the claim. For example. *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 251, 54 V.I. 849 (3d Cir. 2010) (on appeal from D.V.I.); *Berry v. Jacobs IMC, LLC*, 99 Fed. Appx. 405, 410 (3d Cir. 2004) (on appeal from D.V.I.)." *Edwards*, 2015 V.I. LEXIS 13 at *24, n. 62.

articulated by the *Edwards* court.[3] In this case, the conduct alleged by Mina falls substantially short of the type of conduct that case law from this and other jurisdictions has recognized as so severe and outrageous as to allow an intentional infliction of emotional distress claim to go before a jury. Defendants' conduct is not so ". . . outrageous in character . . . as to go beyond all possible bounds of decency . . ." Therefore, Defendants are entitled to summary judgment on Count IV.

### V. Defendants are entitled to summary judgment on Count V — Defamation

Plaintiff alleges that Defendants attacked and defamed his character "by making false and misleading statements concerning Plaintiff's honesty and veracity" (Complaint, ¶38) "to Plaintiff's co-employees and other third parties." (Complaint, ¶39). Specifically, Plaintiff testified that Defendant "Dennison made an allegation that there was $180,000.00 in Association funds missing . . . insinuating that Mina was guilty of impropriety . . ." Opposition, at 8. These statements allegedly were ". . . made in front of hotel guests." *Id.* at 8-9.

Plaintiff also alleges that Defendants, specifically the members of the New Board, issued a memo on March 25, 2000 accusing Plaintiff of

---

[3] "Even if the Defendant did not have the right to remove Plaintiff from its property, the Court finds that calling Plaintiff's VITA supervisor to advise him that Plaintiff was no longer welcome on Defendant's property does not constitute outrageous conduct. Plaintiff's claim for intentional infliction of emotional distress does not survive summary judgment." *Edwards*, 2015 V.I. LEXIS 13, at *25. In *Manns v. Leather Shop*, 960 F. Supp. 925, 36 V.I. 214, 222-23 (D.V.I. 1997), the District Court held that "[a]llegations that the defendant made statements concerning the plaintiff's poor job performance and alleged misconduct simply do not rise to the level of extreme and outrageous behavior by the defendant." Even acts that may give rise to successful sexual harassment claims may not rise to the high standard necessary to prevail on an intentional infliction of emotional distress claim: "Other courts have held that conduct that gives rise to Title VII liability does not necessarily support a claim for intentional infliction of emotional distress. *See, e.g., Stingley v. State of Ariz.*, 796 F. Supp. 424, 431 (D. Ariz. 1992) (holding that Title VII statutory discrimination occurs at a much lower threshold of inappropriate conduct than the threshold required for the tort of intentional infliction of emotional distress); *Anspach v. Tomkins Industries, Inc.*, 817 F. Supp. 1499, 1507 (D. Kan. 1993). In *Anspach* a female employee of the defendant company alleged that she was sexually harassed by coworkers, that the company failed to take adequate remedial actions, and that the company retaliated against her for opposing sexual harassment by altering the method in which she operated her machine and demoting her husband. *Anspach*, 817 F. Supp. at 1508. The court found that no reasonable jury could find that this conduct was so extreme and outrageous as to make the company liable for intentional infliction of emotional distress." *Codrington v. V.I. Port Auth.*, 911 F. Supp. 907, 33 V.I. 245, 258 (D.V.I. 1996).

various acts of wrongdoing in connection with his duties as General Manager. *See* Supplemental Memo, Exhibit E. Plaintiff alleges that the sum of the March 25, 2000 memorandum's contents are inaccurate and that HOTC forwarded that memo to the Government of the Virgin Islands Department of Unemployment Insurance. Opposition, 9.

 The Supreme Court of the Virgin Islands, in *Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566 (VI. 2012), set out the elements a plaintiff must establish to survive a motion for summary judgment on a defamation claim:

> The first element is "a false and defamatory statement concerning another." The truth or falsity of a statement is generally a question of fact for the jury, and statement or communication is only defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."
>
> The second element is "an unprivileged publication to a third party." "Publication" means the "communication intentionally or by negligent act to one other than the person defamed." ... The term "unprivileged" refers to the alleged defamer's inability to demonstrate that he was in some way "privileged" to make the defamatory communication ...
>
> The third element can generally be described as "fault." The level of fault varies with the parties to the defamation action, but the Restatement employs the minimum standard in its general definition of defamation. That minimum standard is, "fault amounting to at least negligence on the part of the publisher." ...
>
> The fourth element is "either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

57 V.I. at 586-87 (*citing* Restatement (Second) of Torts § 557, 558 (b-d), and 559).[4]

 Plaintiff's allegation that Defendant Dennison made statements concerning HOTC missing $180,000 while hotel guests were present fails

---

[4] The Supreme Court "has adopted the basic elements for a claim of defamation set forth in the Second Restatement of Torts. *See Kendall v. Daily News Pub. Co.*, 55 V.I. 781, 787 (V.I. 2011)." *Id.* at 585-86.

to establish the first element of defamation — the statement's veracity. While "truth or falsity of a statement is generally a question of fact for the jury," here no party to this case disputes that $180,000 was missing from HOTC. Therefore, the veracity of the statement is not subject to a jury's adjudication because it is an undisputed fact.

Second, even if an "insinuation" of wrongdoing by Mina were present in Dennison's statement, its publication "in front of a number of hotel guests" (Opposition, at 8-9) is inadequate to establish actionable defamation. Plaintiff has identified none of the transient hotel guests who allegedly overheard Dennison's statement, and presents no explanation as to how that publication harmed his reputation as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. As such, apart from the veracity of the statement attributed to Defendant Dennison, it does not constitute "an unprivileged publication to a third party."

Plaintiff alleges that the New Board "issued a memo dated March 25, 2000, accusing Mina of being an incompetent general manager." Opposition, at 9. That memorandum outlines various issues the New Board had with Plaintiff's work as general manager, and is addressed to Plaintiff. A copy of the memo was sent to the Government of the Virgin Islands Department of Unemployment Insurance in connection with Plaintiff's claim for unemployment benefits. Otherwise, the memo was only sent to Plaintiff. The publication to the Government of the Virgin Islands is privileged, as it was made in the context of the Government's exercise of its statutory duty to adjudicate Mina's unemployment claims, relative to the circumstances of his employment with HOTC.

Therefore, Plaintiff's defamation claims against the individual Defendants and HOTC fail to satisfy all four of the elements outlined in *Joseph v. Daily News Publishing Co., Inc.*, and Defendants are entitled to summary judgment on Count V.

## CONCLUSION

There exists no genuine dispute regarding any material facts giving rise to the litigation as to Counts I, II, IV and V. As to Count III, there exists sufficient factual evidence that could lead a reasonable jury to find that Defendant HOTC is indebted to Plaintiff in amounts to be determined, relative to Plaintiff's use of his own money to pay certain HOTC debts. Plaintiff will have the opportunity to present his proof to establish the fact

of any debt of HOTC, including amounts expended and amounts reimbursed. At this juncture, Defendant HOTC's motion for judgment as to allegations of debt is denied.

Plaintiff's remaining counts will be dismissed a matter of law against all Defendants. First, the Outgoing Board failed to provide adequate notice of the February 18, 2000 meeting to the timeshare unit owners as required by HOTC's By-Laws. Therefore, the actions the Outgoing Board took during that meeting are invalid, including the approval of the Management Contract with Plaintiff. Additionally, public policy does not permit the Outgoing Board, on its final day in office, to bind the incoming Board with a multi-year employment contract. Therefore, Defendant HOTC did not breach its contract with Plaintiff as Plaintiff was an employee at will by virtue of his oral contract with HOTC, and his employment was terminable at will by either party.

Second, at all times until he was terminated on March 25, 2000, Plaintiff was a supervisory employee, excluded as a covered "employee" under the Virgin Islands Wrongful Discharge Act. As such, Defendant HOTC is entitled to summary judgment on Plaintiff's claim that HOTC violated the WDA.

Third, none of the acts alleged by Plaintiff as to any of the Defendants is sufficiently extreme or outrageous as a matter of law to permit Plaintiff's claims of intentional infliction of emotional distress to survive summary judgment.

Fourth, Plaintiff fails to allege facts sufficient to permit a jury to find that he has established the existence of the elements necessary to prevail on his claim for defamation.

An Order will enter simultaneously with entry of this Memorandum Opinion granting Defendants' Motion, in part, dismissing Counts I, II, IV, and V as to all Defendants, and denying Defendant HOTC's Motion as to Count III.